SAMUEL W. FRIEND, EBENEZER KITZMILLER and WILLIAM W. BRAY *vs.* ARCHIBALD C. HAMILL.

*Selection of Jurors by the Circuit Judges — Literal adherence to the form of a Certificate, unnecessary — Judges of Election — Character of Evidence admissible in an Action against Judges of Election for Fraudulently rejecting a Vote — Quo animo — Construction of the Act of 1864, ch. 109, making Parties to suits competent Witnesses — Admissibility of Evidence — Exemplary Damages — Practice in the Appellate Court.*

Under the Act of 1868, ch. 316, any one of the Circuit Judges may select the list of names from which the jurors are to be drawn.

A certificate by a Judge "that the aforegoing list of names to serve as jurors, were selected in conformity with Acts of Assembly in such case made and provided," is a substantial compliance with the Act of 1868, ch. 316, which requires the Judge to append to such list, a certificate "that said list of names has been duly selected in conformity with, and according to the spirit and intent of this Act;" a literal adherence to the form of the certificate is not necessary.

The office of judges of election is in its nature judicial, and they are only legally responsible for an honest and faithful exercise of their judgments; they are not liable for the consequences of mistakes honestly made, but are liable both civilly and criminally for a wrong which they wilfully, fraudulently or corruptly perpetrate.

In an action against judges of election, to recover damages for wilfully, fraudulently and corruptly refusing to allow the plaintiff to vote, every fact and circumstance not in violation of cardinal rules of evidence, should be allowed to go to the jury, in proof of the fraudulent, malicious and corrupt motives by which he avers the defendants were influenced in their action; and the defendants should likewise be allowed to adduce every fact and circumstance which the same rules of evidence will permit, to show that the injury they inflicted, was the result of an honest and innocent mistake, and not of malice, fraud or corruption.

Friend, *et al vs.* Hamill.

In such an action where the inquiry turns upon the motives by which the defendants were actuated in rejecting the plaintiff's vote, evidence as to the rejection of other votes on that day by the defendants, and the reasons assigned by them therefor, is admissible to show the *quo animo* of the particular transaction.

Under the Act of 1864, ch. 109, making parties to suits competent witnesses, a party cannot offer in evidence his own declarations in his own behalf, in relation to the subject of controversy, or matter in issue   The Act does not change any of the rules relating to the admissibility of evidence.

In an action against judges of election to recover damages for wilfully and maliciously rejecting the plaintiff's vote at the State election of 1866, his name being registered on the list of qualified voters, which the defendants had before them, it is not competent for the defendants to show in mitigation of damages, or for any other purpose, that prior to the election, they had heard from common report, that the plaintiff was a disloyal man, and had done acts which would disqualify him as a voter under the Constitution of 1864; or that they had been informed by citizens whose names they did not remember, that prior to the adoption of the Constitution of 1864, the plaintiff expressed a desire for the success of the rebels, over the arms of the United States, and they believed such information; or that as a reason for requiring the plaintiff to take the voter's oath, they had learned from current report in the neighborhood, prior to the election, that the register of 1866, by whom the plaintiff had been registered as a qualified voter, had not administered the voter's oath, prescribed by the Constitution of 1864, to all persons whom he had registered as qualified; or that it was currently reported that the plaintiff sympathised with the rebellion and those engaged in it, and that one of the defendants had heard the report and believed it.

And in such an action facts tending to show special and express malice on the part of one of the defendants towards the family of which the plaintiff was a member, and that there was no error of judgment on the part of such defendant, but that he was wilfully carrying out a predetermined and expressed resolve to exclude the plaintiff's vote, are admissible in evidence.

To entitle the plaintiff in an action against judges of election, to recover damages for refusing to receive his vote, he must show that the defendants in doing so, acted maliciously and corruptly; and in such case, the jury may give exemplary and punitive damages.

Where an exception is taken simply to the rejection of "the several prayers of the defendants, as above stated," the reasons which the Court below may have assigned for rejecting any of them, cannot be reviewed in the Appellate Court.

---

Friend, *et al. vs.* Hamill.

---

APPEAL from the Circuit Court for Allegany County.

The facts of the case, together with the exceptions taken by the defendants, are sufficiently stated in the opinion of the Court.

The cause was argued before MAULSBY, MILLER, ALVEY and ROBINSON, J.

*George A. Pearre,* for the appellants.

*William Walsh* and *Thomas J. McKaig,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This action was brought against the appellants, judges of election, to recover damages for refusing to allow the appellee to vote at the State election in November, 1866. The record contains a large number of exceptions, and the trial appears to have been strongly contested at every step of its progress. In this Court the cause has been argued with great earnestness and ability. We shall consider and dispose of the several questions in the order in which the record presents them.

When the case was called for trial, the defendants challenged the array of jurors for that term of the Court on two grounds:

1st. That the list of two hundred names from which these jurors were drawn, was selected and made by *one* and not by *all* of the Judges of the Circuit Court.

2d. That no such certificate as is required by law was appended to the said list of two hundred names.

*First.* No difficulty is encountered in disposing of the first objection. The Act of 1867, ch. 329, the first general law abolishing the old and establishing the present admirable system of selecting jurors in the counties, was passed when there was but one Judge for each of the several circuits. The amendatory Act of 1868, ch. 316, was passed after the adoption of the present Constitution, which changed the judicial

Friend, *et al. vs.* Hamill.

system of the State by diminishing the number of circuits, and providing for each circuit a Chief Judge and two Associate Judges, the Chief Judge being made also one of the Judges of the Court of Appeals. By each law the duty of selecting and drawing jurors is devolved upon "the *Judges* of the Circuit Courts for each of the counties." When the Legislature of 1868 reënacted this requirement in the same language used in the preceding Act, it is clear to our minds, they did so in view of the provision in the 21st section of the 4th Article of the Constitution, that "*one* Judge in each of the above circuits shall constitute a quorum *for the transaction of any business;* and the said Judges, or *any of them,* may hold special terms of their Courts whenever in their discretion the business of the several counties renders such terms necessary," a power made indispensable by reason of the number of counties in many of the circuits, and the necessary absence of the Chief Judges in discharge of their more important duties in the Appellate Court. Read, as it must be, in this connection, the true construction of the law is that any one of the circuit Judges may discharge this duty, and without doubt such was the intention of the law-makers. The argument *ab inconvenienti* is also a conclusive answer to the opposite construction, for it would, in many cases, be impossible for the three Judges to unite in the performance of this duty in each of the counties, and for each of the numerous terms of the Courts. The entire judicial system of the State would be embarrassed in its operation, and the regular and prompt administration of justice defeated by the opposite construction.

*Secondly.* The law requires that when this list has been made the Judge shall append thereto a certificate "that said list of names has been duly selected in conformity with, and according to the spirit and intent of this Act." Substantial compliance with this requirement was undoubtedly essential to the lawful organization of a jury to try this cause. The certificate in the record signed by the Judge is as follows:

Friend, *et al.* vs. Hamill.

"I hereby certify that the aforegoing list of names to serve as jurors were selected *in conformity with* Acts of Assembly in such case made and provided, this 14th day of November, 1868." There have been many decisions in this State as to the construction of like provisions in reference to official certificates, and the observance of forms prescribed by Statute.

In *Hollingsworth vs. McDonald*, 2 *H. & J.*, 237, it was decided that a literal adherence to the form of the certificate for the acknowledgment of deeds of *femes covert*, was not essentially requisite, and that the omission of words deemed essential could be supplied by the substitution of others of similar import and signification. In *Hall vs. Gittings*, 2 *H. & J.*, 380, the words "legally authorized and assigned" were held equivalent to the words "duly commissioned and sworn," in a certificate required by the Act of November, 1766, chap. 14, to be given by a county clerk, as to the qualification of the justices before whom an acknowledgement of a deed conveying land in another county was made; and in the case of *Beall vs. Lynn*, 6 *H. & J.*, 355, a still further departure from the language of that statute was sanctioned, the Court saying that in the former case of *Hall vs. Gittings*, reliance had been placed on the words "legally authorized and assigned," not because there was any magic in them, but because they import that the justices must have been commissioned and sworn, and are therefore a substantial compliance with the Act, and that any other words which necessarily import that they were commissioned and sworn, would be as substantial a compliance with the Act as "legally authorized and assigned." In *Young vs. The State*, 7 *G. & J.*, 253, several omissions in the strictly prescribed statutory formula of a sheriff's bond were held not to invalidate the instrument, and that the duties imposed by the omitted words were covered by the general language in the commencement of the condition of the bond; and in that case the Court with emphasis repeat, "that *substance* and not *form* is to control the construction of legislative enactments prescribing a mode in which acts are to be done." These

decisions were followed in the similar case of *Warner vs. Hardy*, 6 *Md.*, 525. The rule of substantive compliance is too well settled by these authorities to be for a moment doubted, and it must control the decision of the question now before us. This jury law provides that the Judges shall select the names of a certain number of persons of a prescribed age, from the tax list and poll-books, within a certain time, and after notice of time and place given to the bar, and in the presence of such practicing members thereof as may choose to attend, and that they shall make the selection fairly and impartially, with special reference to the intelligence, sobriety and integrity of such persons, and without the least reference to their political opinions. A certificate, signed by the Judge, that he has discharged this duty, and made the selection "*in conformity with*" the law, is a substantial compliance with that part of the statute relating to the certificate. It must be remembered this duty is imposed on Judges who act in its performance, in view of the responsibility attaching to their high official position, and under sanction of their official oaths, and the objection here does not reach to any charge of official misconduct therein, but simply to non-adherence to the letter of the statute in mere matter of form. Where a statute like this directs how the selection shall be made, a certificate stating it was made "*in conformity*" therewith, upon every reasonable construction of language, means that it was made "according to the spirit and intent" of the law. The two expressions are of equivalent import; the use of the latter phrase in the present certificate would impart to it no additional substance or force, and, as we have seen from the authorities cited, either may be used, or words of similar signification substituted for both. This second objection cannot therefore be sustained.

It will aid us in disposing of the exceptions, most of which are upon the admission or rejection of testimony, if we first notice briefly the nature of the action, what must be proved to sustain it, and what is admissible in defence. The case of

*Bevard vs. Hoffman, et al.,* 18 *Md.,* 475, has settled the law of this State, that judges of election hold an office in its nature judicial, and cannot be held legally responsible for anything more than an honest and faithful exercise of their judgments, and are not liable for the consequences of mistakes honestly made, but are liable, both civilly and criminally, for a wrong which they wilfully, fraudulently or corruptly perpetrate. This declaration, therefore, properly avers that the defendants wilfully and fraudulently and corruptly refused to allow the plaintiff to vote. These charges must be sustained by proof to the satisfaction of the jury, and as in analagous cases, where fraud is the subject of inquiry or ground of action, any fact, however slight, if at all relevant to the issue, must be admitted in evidence. *Waters vs. Dashiel,* 1 *Md.,* 474. The inquiry before this jury was, whether the defendants rejected. the plaintiff's vote wilfully, maliciously and corruptly, or from an honest mistake of judgment. In a case where that is the inquiry, and where the right of which the plaintiff was deprived is of acknowledged importance, indeed of almost inestimable value, the right to say who he desired should represent him in the Legislature of the State, clothed with power to pass laws affecting his life, liberty and property, every fact and circumstance not in violation of cardinal rules of evidence, should be allowed to go to the jury in proof of the fraudulent, malicious and corrupt motives by which he avers the defendants were influenced in their action. On the other hand, the defendants must also be allowed to adduce every fact and circumstance which the same rules of evidence will permit, to show that the injury they inflicted was the result of honest and innocent mistake, and not of malice, fraud or corruption. We shall now proceed to examine, in their order, the several exceptions taken by the defendants, which alone are brought up for review on this appeal.

1st. The first and second exceptions present substantially the same question.

The plaintiff (who was in politics a Democrat,) proved that he was duly registered as a legal voter prior to the election in November, 1866; that the defendants, judges of that election, were all Republicans; that he offered to vote, and one of the judges said his vote was challenged, and he must take the oath; that he asked who challenged him, and what were the charges against him, to each of which questions the same judge replied he did not know; that he then declined to take the oath, saying he had taken it before the register, and he was not allowed to vote. His counsel then asked him what *other votes* the defendants rejected that day, and for the purpose of showing *mala fides*, said they would follow it up with proof that one of the judges had said more than a month before, that the plaintiff and others they rejected that day, all of whom were Democrats, and offered to vote the Democratic ticket, should not vote. The defendants objected to so much of this evidence as related to *other persons*, whose votes were rejected, but the Court permitted it to go to the jury.

The plaintiff then proved that his father, also a Democrat, and known to the judges as such, and who was likewise a registered voter, offered to vote the same ticket, but one of the judges said there were charges of disloyalty against him, which they did not offer to prove, but told him he must go to the Legislature and get a pardon; that his uncle and three others, also Democrats, and registered voters, were rejected on the same ground of disloyalty, of which no proof was attempted to be offered. This proof the plaintiff's counsel profferred to follow up by the testimony of another witness, that about a month before the election, the same judge had said to him, it was no use for witness and the Hamills, who had not registered before him, (he having been one of the registers for the previous year,) to register before Wilson, (the register for 1866,) for *they should not vote*, and that the plaintiff, and the parties named by him as rejected, were the parties alluded to by the said judge in this conversation. To so

much of this evidence as relates to the rejection of the votes of these *third parties,* and each of them, and the , reasons assigned by the defendants, or any of them therefor, the defendants objected, because such evidence is collateral to the issue in this cause, and would impose on the defendants the necessity of an examination before the jury, of the cases of each one of these rejected votes, but the Court admitted the evidence.

There is no error in these rulings. This testimony throws light on the motives by which the defendants, or at least one of them, were actuated in rejecting the plaintiff's vote, and tends to show they were influenced therein by partisan malice, and were not discharging their duty impartially, faithfully and honestly. Where the inquiry turns upon intention and motive, and in cases where fraud, corruption and the like constitute the gist of the action, acts and declarations of a *similar character,* at or about the *same time,* to or towards *third parties,* are admissible to show the *quo animo* of the particular transaction. In *Cullen vs. Morris,* 2 *Starkie,* 577, which was an action against a returning officer, for refusing the plaintiff's vote, and where it was held the action could only be maintained by proving malicious and improper motives, evidence was adduced and received by Chief Justice ABBOTT of the defendant's conduct with regard to *other votes,* to show he acted partially in excluding votes for one candidate, whilst he received those of persons similarly circumstanced, for the other. In *Webb vs. Smith,* 4 *Bing., N. C.,* 373, which was an action to recover a statutory penalty for bribery at elections, the declaration charged the defendant with bribing one *Jones* to vote for a particular candidate, and evidence, that on the same day, and at the same place, he pursued, with respect to *other voters,* the same course as with *Jones,* and that they all voted for the same candidate, was held by all the judges to be admissible, to show *animus* and guilty knowledge. Numerous instances of the reception of like testimony in cases where fraud and false pretences were the sub-

jects of investigation, could be cited, but we need only to refer to *Wood vs. The United States,* 16 *Peters,* 360; *Bottomley vs. The United States,* 1 *Story's Rep.,* 143; *Casey vs. Hotaling,* 1 *Hill,* 311; *Rowley vs. Bigelow, et al.,* 12 *Pick.,* 307; *Hall vs. Naylor,* 18 *N. Y. Rep.,* 588; *French vs. White,* 5 *Duer,* 254. These, and cases of like character, form an exception to the general rule, excluding collateral facts or *res inter alios acta.* The authorities cited abundantly sustain the rulings in these exceptions.

2d. The third exception is to the refusal of the defendants to prove by one of themselves, in order to show they had no malice against the plaintiff, that when they assembled on the morning of the election, they concluded, in a conference among themselves, to permit all who were registered to vote, and they knew the plaintiff was a registered voter. An earnest, ingenious, but in our judgment, unsuccessful effort was made by the appellants' counsel to rescue this testimony from the operation of the general rule, that a party cannot offer his own declarations in his own favor, in relation to the subject of controversy or matter in issue. Our statute, making parties to suits competent witnesses, does not change any of the rules regulating the admissibility of evidence, and we are unable to find any ground, not infringing those rules, upon which the admission in their favor of what they said to each other, or agreed upon in a private conference on the morning of the election, and before the polls were opened, in reference to the course of action they would pursue in conducting the election, can be safely rested. Each of them had the right, and two of them, as the record shows, did testify that they did not reject the plaintiff's vote from malice or ill-will. They had thus the benefit before the jury of their own statements of what their own intentions and motives were at the time they acted, but no rule of evidence will permit the offering of their own declarations previously made, to justify their conduct and disprove malice. This ruling is therefore affirmed.

3d. The testimony offered by the defendants, either generally or in mitigation of damages, in the fourth, fifth, sixth and seventh exceptions is all of similar import, viz:

1st. That it was commonly *reported* in that election district prior to the election of 1866, and had come to the hearing of the defendants prior to that day, that the plaintiff was a disloyal man, and had done acts which would disqualify him as a voter under the Constitution of 1864.

2d. That the defendants had been *informed* by citizens of that district, *whose names they cannot now remember*, that prior to the adoption of the Constitution of 1864, the plaintiff expressed his desire for the triumph of the arms of those engaged in armed hostility to the United States, commonly called rebels, over the arms of the United States, and that they placed confidence in and believed such information.

3d. That it was *currently reported in the neighborhood*, that Wilson, the register for 1866; (by whom the plaintiff had been registered as a qualified voter,) had not administered the voter's oath prescribed by the Constitution of ˈ1864 to all persons whom he had registered as qualified voters, and these *reports* had been communicated to the defendants prior to the election of 1866, and that they believed them, and for these reasons, required the plaintiff to take the oath.

4th. That it was *commonly reported* in that district, that the plaintiff was a man who sympathized with the rebellion, and those engaged in it, and that one of the defendants heard this report and believed it.

Where the question is, whether a party has acted prudently, wisely, or in good faith, the *information* on which he acted, whether true or false, is original and material evidence and not mere hearsay, (1 *Greenleaf's Ev.,* sec. 101,) and we have been referred to cases of actions for malicious prosecution, where such *information* has been admitted for the defendant on the question of probable cause. In such actions, want of probable cause is a material averment in the declaration, and though negative in form, must be supported, by

Friend, *et al. vs* Hamill.

the plaintiff, by some affirmative proof, unless the defendant pleads the truth of the facts involved in the prosecution. But when the plaintiff has given such proof, and the defendant attempts to rebut it, he must show a state of case warranting an honest and reasonable belief on his part, of the truth of the charge for which he has prosecuted; he cannot rely on circumstances of mere suspicion as evidence of reasonable or probable cause. *Busst vs. Gibbons*, 6 *Hurls. and Nor.*, 912. Thus, as was said by Chief Justice TINDAL, in *Broad vs. Ham.*, 5 *Bing.*, *N. C.*, 725, "there must be a reasonable cause, such as would operate on the mind of a discreet man; there must also be a probable cause, such as would operate on the mind of a reasonable man," and by the same Judge, in another case, (*Delegal vs. Highley*, 3 *Bing.*, *N. C.*, 959,) where he held that a plea of reasonable and probable cause to be good, must allege "that the knowledge of certain facts and circumstances, which were sufficient to make the defendant, or any reasonable person, believe the truth of the charge which he instituted before the magistrate, existed in his mind at the time the charge was laid, and was the reason and inducement for his putting the law in motion." There are cases to be found where information communicated by known persons, and derived from a source reasonably calculated to induce belief in its truth, has been admitted, but we can find no case where any Court has ever allowed a jury to consider mere vague rumor, or information said to come from unknown or unnamed parties, or current or neighborhood report, as reasonable cause for the prosecution, or as sufficient ground for inferring the prosecutor believed in the truth of the charge for which he instigated or procured a prosecution. But suits for malicious prosecution for criminal offences, are not strictly analagous to the one before us, because probable cause justifies the prosecutor, notwithstanding the most express malice, the prosecution being for the benefit of the public. Malice, fraud and corruption in the discharge of official duty, are the gist of this action, and what evidence on the part of the de-

fendants should be admitted, to show the contrary in opposition to that of the plaintiff, tending to support the charge, must depend, in a great measure, on the circumstances of each case.   The defendants here had before them the plaintiff's name on the official list of qualified voters.   They knew he had been so registered but a short time previous to the election by the register, an officer, whose duty it was under the registry law, as it then stood, and under the sanction of his official oath, before registering any one as a qualified voter, to administer to him the oath set forth in the fourth section of the first Article of the Constitution of 1864, and diligently to inquire and ascertain the truth or falsehood of the very charges to which these rumors referred, and for that purpose had power to summon and compel the attendance of witnesses.   They knew that by the terms of that oath, the party taking it, solemnly denied the commission of any such acts. With this knowledge in their possession at the time, and having themselves no knowledge of the truth of these charges, and no witnesses being present or produced to substantiate them, they proffer this testimony of mere rumor and report, coming from no ascertained or tangible source, from no named or known parties, accepted with equal credulity against the official conduct of the register as against the plaintiff, to show absence of malice or ill-will, in the act by which they inflicted the great wrong of depriving a citizen of his vote.   If we should assume they had, or honestly supposed they had, the power to go· behind the action of the register, and inquire into these charges for themselves, impartial, discreet and reasonable men, uninfluenced by improper motives, would not, and could not, in our opinion, have yielded credence to or risked action upon vague rumors and reports of this description.   All this testimony, in our judgment, was wholly inadmissible for any purpose, and the rulings rejecting it are affirmed.

4th.. It appears from the eighth exception, that after certain testimony, subject to exception, had been elicited on the

cross-examination of Friend, one of the defendants, their counsel submitted fourteen objections to specific portions thereof. Of these, the first, fifth, sixth, eighth, ninth, tenth and eleventh were sustained, and the others overruled.

It was in proof that a list of eight persons, including the plaintiff, all Democrats, was made out as "votes challenged" (the objection being "to the loyalty of the above named parties,") by the Republican candidate for the Legislature residing in that district, was signed by himself and three others, and handed to the judges of election, themselves all Republicans, on the morning of the election, before the polls were opened, and was accepted and acted upon by the defendants as a challenge to the voters thus designated. The fact that the names of these eight, besides the plaintiff, were on the official list of registered qualified voters then before the judges, as well as what passed between the judges, or any of them, *on the day of election, and while the polls were open,* in reference *to the rejection of the votes* of any of these parties, is admissible on the same ground, and for the same reason assigned for the admission of the testimony in the first and second exceptions. There was no error, therefore, in overruling the second and third objections. The list of questions referred to in the fourth objection, is not in the record, but Friend, in his testimony, proves that about noon on the day of election, he handed them to Patrick Hamill, (one of the eight on the challenge list, and whose vote was that day rejected,) *after he had taken the oath,* and said to him they were necessary *preliminary questions* that should be answered. The law certainly had prescribed no list of questions to be propounded to a voter on the day of election, by the election judges, which he was required to answer before he could vote. But for the reason already stated, this objection was properly overruled.

In order to determine correctness or error in the rulings upon the seventh, twelfth, thirteenth and fourteenth objections, reference must be made to the proof already in the

case. It was shown that this defendant Friend, was one of the judges of the election in October, 1864, upon the adoption or rejection of the Constitution of that year, that he was also one of the original registers under the Registration Act of 1865, ch. 174, and that Wilson was the register under the same Act for 1866. Testimony had also been offered on the part of the plaintiff, and rightly admitted, that Friend had said, prior to the election of 1866, it was of no use for the *Hamills*, and others who could not register before him, to try to register before Wilson, for those that could not register before him *should not positively vote*, if they did register before Wilson. It was also in evidence, by his own testimony, that the challenge list before referred to, (first and prominent on which were the four Hamills,) made out by Falkenstine, then the Republican candidate for the Legislature, (who was also one of his colleagues as register in 1865,) was handed to Friend on the morning of the election, and that he called the attention of his fellow judges to this list as a challenge of their votes whenever any one of them offered to vote. Now the proof excepted to in these objections, brought out on cross-examination of this same party Friend, consisted chiefly of the facts that he wrote down on the corner of the poll-book, in October, 1864, the names of the Hamills, including the plaintiff, with others, as parties who, as he conjectured, would vote or had voted *against the Constitution*, and that as register in 1865, he had entered on the registration book, opposite the name of Patrick Hamill, the disparaging comment, "did not present himself; *generally reported disloyal;*" and against the name of Henry Hamill, "disloyal by the testimony" of two named witnesses and others. The entry on the same book against the name of the plaintiff, made by the same party, was "did not present himself." All this testimony tends to show special and express malice on the part of this defendant against these particular parties composing this family of Hamills, if not against all in that district whom he regarded as Democrats, and hence reflects

light upon the motives under which *he* acted in rejecting the vote of the plaintiff, who was one of that family; it further tends to show there was no error of judgment *on his* part, but that in the act complained of, he was wilfully carrying out at all hazards a predetermined and expressed resolve to exclude the plaintiff's vote; and it also corroborates the witnesses who had testified to his previous declaration of that purpose, and whose testimony on that point he had contradicted. Upon any one or all of these grounds, there cannot be the slightest doubt as to the admissibility of this testimony and the consequent correctness of the rulings on these objections.

5th. We find no error in the ruling in the ninth exception. The fact that the defendant, Friend, knew the plaintiff had taken the oath so often referred to in this record, and had voted at both the fall elections of 1864, Friend being himself one of the judges of election on both occasions, was pertinent and relevant testimony in connection with other proof in the case. That oath contained not only a denial by the plaintiff, in the most solemn form, that he had up to the time he took it, committed any of the disqualifying Acts mentioned in the 4th section of the 1st Article of the Constitution of 1864, but also an equally solemn asseveration that he would not thereafter commit any such acts. In the absence of all proof that he had since that period violated that oath, the fact that the same party, Friend, required him to take it again in 1866, in connection with other evidence properly admissible and admitted in reference to his participation in the rejection of the plaintiff's vote, tended to show he did so vexatiously and maliciously and as a mere pretext for excluding the vote, notwithstanding he may have honestly supposed judges of election had the discretionary power, under the Constitution of 1864, to administer the oath to voters at this election in 1866, after the registration law had been passed and carried into effect. The honest and impartial exercise of such discretionary power is one thing, its malicious and corrupt use as a pretext for the commission of a wrong in order to secure

party success and subserve partizan purposes is quite another. The latter was the subject of investigation in this case, and the testimony offered and admitted in this exception was pertinent to the issue.

6th. The tenth exception contains the rulings upon the law of the case. The plaintiff offered one prayer and the defendant eight. The Court granted the plaintiff's prayer and the third, fourth, fifth, sixth and seventh of the defendants, and rejected their first, second and eighth.

By the plaintiff's prayer the jury were instructed that if they believed from the evidence the defendants, wilfully, fraudulently and corruptly refused to allow the plaintiff to vote, he is entitled to recover whatever damages the jury shall believe he sustained, and they may also give exemplary and punitory damages. No objection was made in argument to this instruction, and in connection with the defendants' fifth and sixth prayers, by which the jury were instructed that the plaintiff could not recover unless they found from the evidence the defendants rejected his vote from malice, ill-will or corruption, the law was correctly and fairly stated.

The defendants' first prayer asserts that they had the authority to require the plaintiff to take the oath referred to, and if he refused to take it they had the right to reject his vote; and their second asserts they had the further right to propound to him to be answered, such questions as would be calculated to test his truthfulness in taking the oath, or his true understanding of the same. The legal propositions thus presented involve the true construction of several provisions of the Constitution of 1864, relating to the elective franchise, as thereby restricted the registration of voters, and the powers of judges of election at elections held after a general registration law passed by the Legislature, had been carried into effect. . But it is entirely unnecessary for us to enter upon this inquiry now, because the result would be simply the settlement of disputed legal abstractions, having no bearing upon the real issue involved in this case. It is not pretended the

Constitution commanded the defendants to administer the oath at this election, but only that it gave them the discretionary power to do so. Now whether they had this power or not was wholly immaterial, for if they did not have it but honestly supposed they had, and rejected the vote through error of judgment, in that respect the law exempts them from liability, as in legal contemplation no injury was done to the plaintiff, and on the other hand its malicious and corrupt use as a pretext for inflicting the wrong, renders them liable although they actually possessed the power. The prayers we are now considering omit all reference to the honesty and good faith or the contrary of its exercise, a matter which could not be withdrawn from the jury, and seek to justify the defendants on the naked ground of authority. There was clearly no error in rejecting them, and the defendants, by the granting of their third, fourth and seventh prayers, had the benefit of all the law on this point to which they were entitled; for by these instructions the jury were informed the plaintiff could not recover if they found the defendants refused to receive his vote *because he would not take the oath,* if the defendants *honestly thought* that they had the right and that it was their duty to require him to take it before permitting him to vote, however much they may have mistaken their powers and duties in that respect.

The eighth prayer was offered by Bray and Kitzmiller, two of the defendants, and asserts that *unless* the jury find from the evidence that *they* as well as the other defendant, Friend, rejected his vote from motives of corruption, malice or ill-will, *the plaintiff cannot recover.* One plain defect of this prayer is that it denies a recovery, unless the jury find that *all three* of the defendants were influenced by corrupt motives, whereas if *any two* of them so acted, the plaintiff was entitled to recover at least *against them.* This proposition was virtually conceded by the appellants' counsel, and the whole stress of his argument on this part of the case was directed against the reason assigned by the Court below for rejecting the

prayer.    But the exception is simply to the rejection of "the several prayers of the defendants as above stated," and that surely does not reach the reasons the Court may have assigned for rejecting any one of them.    Those reasons are not before us, and we have nothing to do with them, for it is well settled that the ruling excepted to is the only subject of review in the Appellate Court, no matter how erroneous the reasons therefor, given by the inferior Court, may have been.

This disposes of all the exceptions taken by the appellants, and finding no errors therein, the judgment must be affirmed.

*Judgment affirmed.*

(Decided 3d March, 1871.)