WILLIAM H. ESTEP, and others, *vs.* GEORGE H. MORRIS, Guardian, and others.

*Competency of a party interested in a Will, to subscribe it as an Attesting Witness, and to Prove it in the Orphans' Court—Act of* 1864, *ch.* 109.

One who is the executor of a will, and also guardian thereunder of the infant devisees, is competent to attest the will, and to prove it in the Orphans' Court; his incompetency, at common law, to prove the will by reason of his interest therein, having been removed by the Act of 1864, ch. 109.

By the Act of 1864, ch. 109, a party who takes an interest under a will, is a competent witness to prove it.

APPEAL from the Circuit Court for Prince George's County, in Equity.

John L. Estep, of Prince George's County, departed this life sometime in the month of June, 1870, leaving a last will and testament which was duly admitted to probate on the 23rd of August, 1870. The testator after providing by his will a reasonable and comfortable support for his wife during her life, devised to his three infant children, James T., Richard A., and Benjamin N. Estep, his entire estate, real, personal and mixed, to be equally divided between them, share and share alike; and should any one of said children die during his minority, his portion of the estate was to go to the survivor or survivors of them as the case might be. The testator appointed the appellee, George H. Morris, the sole executor of his will, and also guardian of the said infant children; he accepted both offices, was duly qualified, and entered upon the discharge of the duties attached to said appointments. The wife of the testator died before her husband; he was married twice, and left at the time

of his death four children by his first marriage, of full age, namely, William H. Estep, George H. Estep, Joanna P. Gibbons, the wife of George T. Gibbons, and Ann M. Oliver, the wife of Leonard Oliver; and three minor children by his second marriage, the devisees under his will. The said George H. Morris was one of the subscribing witnesses to the will of the testator, and the only witness who proved it in the Orphans' Court, the two other subscribing witnesses being dead at the time the will was probated. No caveat was filed to the will. The personal estate of the testator was administered by the executor who filed his account in the office of the Register of Wills, distributing the residue after paying debts and expenses, among James, Richard and Benjamin Estep.

On the 28th of February, 1871, Morris as guardian and next friend of the infant children of the testator, filed a bill for the sale of the real estate devised to them by their father, alleging that the same was not susceptible of advantageous division among them, and that it would be greatly to their interest that said estate should be sold, and the proceeds thereof invested in some productive fund for their benefit. A decree was accordingly passed for the sale of the said estate, and a trustee appointed to make the sale. The sale was made and reported to the Court, William H. Tubman being the purchaser, and on the 19th of December, 1871, an order *nisi* was passed. On the 13th of January, 1872, William H. Estep, George T. Estep, George T. Gibbons and Joanna, his wife, and Leonard Oliver and Ann, his wife, filed the following exceptions to the ratification of the sale:

1st. Because the Court had no jurisdiction to pass the decree under which the sale was made, for the reason that the said John L. Estep, died intestate; the pretended will not having been legally executed, or properly proven or probated, is inoperative and void.

2nd. Because the said John L. Estep having died intestate, the exceptants were entitled to a portion of his real estate, and ought to have been made parties to the proceeding under which the decree was passed; and the whole proceeding was irregular.

3rd. Because the paper writing purporting to be the last will and testament of John L. Estep, was not legally executed and attested, and is void and inoperative to pass title to the real estate therein mentioned, and attempted to be devised, because George H. Morris, one of the subscribing witnesses to said alleged will, having been appointed thereby both executor and guardian, and having accepted both offices, is not, therefore, either a competent or credible witness to attest said will.

On the 19th of October, 1872, the Court, (FORD, J.,) passed an order overruling the exceptions and finally ratifying and confirming the sale.

From this order the exceptants appealed.

The cause was argued before BARTOL, C. J., BOWIE, GRASON, MILLER and ROBINSON, J.

*Frank. H. Stockett,* for the appellants.

The admission of the will to probate is not conclusive as to its validity to transmit real estate. It is only *prima facie,* and its due execution and attestation may be inquired of by persons having an interest in the realty. *Massey vs. Massey,* 4 *H. & J.,* 145 ; *Townshend vs. Duncan,* 2 *Bland,* 45 ; *Warford, et al. Lessee vs. Colvin,* 14 *Md.,* 532, 556 ; *Randall vs. Hodges,* 3 *Bland,* 479 ; *Modern Probate of Wills,* 475 *to* 487 ; *Darby vs. Mayer,* 10 *Wheat.,* 465.

Was George H. Morris, who was named in the will as executor and guardian, a "credible" or competent witness to establish it? Section 301, of Art. 93, requires that all devises of real estate "shall be attested and subscribed in the presence of the testator, by three or four

*credible* witnesses, or else they shall be utterly void and of none effect.''

Credible or competent witnesses are persons who are not *disqualified* by reason of *interest* or other cause to be *admitted* as witnesses. *Smith's Probate Law*, 22; *Wyndham vs. Chetwynd*, 1 *Burr.*, 414; *Amory vs. Fellowes*, 5 *Mass.*, 219; Morris was, therefore, as executor and guardian, clearly *interested* in establishing this will, and therefore not a ''credible'' witness. *Holdfast vs. Dowsing*, 2 *Strange*, 1253; *Wyndham vs. Chetwynd*, 1 *Burr.*, 414; *Emanuel vs. Constable*, 3 *Russel*, 436; *Helliard vs. Jennings*, 1 *L. Raymond*, 505; *Hawes vs. Humphreys;* 9 *Pick.*, 350; *Snelgrove vs. Snelgrove*, 4 *Des.*, 274; *Allison vs. Allison*, 4 *Hawk's Rep.*, 141; *Amory vs. Fellowes*, 5 *Mass.*, 219.

Morris being clearly an *incompetent* witness to attest the due execution of said will—that is, not ''credible,'' on the ground of interest, under section 301, of Art. 93, the question arises, was he made competent by the Act of 1864, ch. 109? The Legislature, by that Act, never intended to dispense with the qualifications of attesting witnesses to wills of real estate, as had been established before.

The Act certainly does not, in words, repeal the former law. It only proposes to repeal the 1st, 2nd, 3rd, 4th and 5th sections of the 37th Art. of the Code, and to re-enact new provisions in the *place* and *numbers* of the sections so repealed. See Art. 3, sec. 29, of the Constitution, as determining the scope of the Act of 1864, ch. 109.

And though the words of the Act of 1864 are very broad and general, the Court should hesitate before anything short of express words or unmistakable intention, should be allowed to repeal a law so venerable from age, and so admirable, as shown by experience, in protecting titles of real estate and the interests of heirs, as the one in question. If the Legislature meant that interest should

not discredit or render incompetent an attesting witness to a will, then the children of a dying person might be stript of all the estate of their father, which might be given by a fraudulent will to *three* persons, who alone were the attesting witnesses, and if their *credibility* could not be destroyed before the jury, the Court could not exclude as "*incompetent,*" and the will would be established.

In such a case the Court will so construe both laws as to give to each its full effect—they not conflicting. *Pott. Dwar. on Statutes,* 174, *et seq.; Sedgwick on Stat. Law, ch.* 6, *pages* 230-2-3 *to* 51 ; 1 *Kent Com.*, 462.

In reply to the objection of the appellees, that the appellants not being parties to the proceeding under which the property was sold, had no right to object to the ratification of the sale, the following authorities were referred to : *Glenn vs. Clapp,* 11 *G. & J.,* 1 ; *Kauffman vs. Walker,* 9 *Md.,* 229 ; *Bolgiano vs. Cooke,* 19 *Md.,* 375 ; *Earle vs. Turton, et al.,* 26 *Md.,* 34.

*Joseph K. Roberts, Jr.,* for the appellees.

The Court below properly overruled the exceptions and ratified the sale,

1st. Because George H. Morris was a competent and credible witness to attest the will, and the same was, therefore, legally executed, and good to pass both real and personal estate, there being three competent and credible witnesses to the same.

It would be difficult to frame a law, the language of which could be more broad and comprehensive than that of the first section of the Act of 1864, ch. 109 ; and the intent of the law being to authorize and enable *parties in interest* to testify *in any suit or proceeding,* there is no good reason why an executor cannot be a witness to a will. The probate of a will is certainly a *proceeding in the Orphans' Court,* and an executor to a will is no more

interested than a plaintiff or defendant to a suit or other action in the other Courts of this State.

The tendency of the English decisions in construing the 6 and 7 Vict., ch. 85, and 14 and 15 Vict., ch. 99, from which the Act of 1864 is taken, is to the effect that no person interested *in any manner* is thereby disqualified as a witness *in any proceeding, suit or action,* and the language of the Act implies such a meaning. *Act of* 1864, ch. 109; 2 *Taylor on Evidence, (Ed.* 1868.)

2nd. The will was properly probated or proven. The Register of Wills certifies that Geo. H. Morris (one of the subscribing witnesses) made oath that he saw the testator sign and seal said will, and pronounce the same to be his will, &c. ; and that he, and William Hall and Geo. W. Morton, *the other two subscribing witnesses, both since deceased,* did subscribe their names thereto, at the request of the testator, in his presence, and of each other. Morris, the only surviving witness, proves that he signed it ; that he saw the other two witnesses sign it, and that they are both dead. This is certainly sufficient proof of the execution of the will. *Code, Art.* 93, *secs.* 323 *and* 326.

More than that, the probate of a will by the Orphans' Court is *prima facie* evidence that such will was properly proven, and binding on all parties until shown to the contrary. *Code, Art.* 93, *secs.* 323 *and* 325.

3rd. The appellants not being parties to this proceeding, have no right to object to the ratification of the sale made thereunder.

They had their remedy at first by way of caveat to the will, and when the will was submitted to the Orphans' Court for probate, they should then have made known their objection. If the will is invalid and illegal, they have still their remedy by way of ejectment, the sale under this proceeding not in any manner affecting their legal rights therein. They gave no notice of objection to

the will at the death of the testator, none when the will was submitted for probate, and not until the property is sold by a trustee, under a decree of the Court, is there any objection to the sale of the property or to the validity of the will. *Alexander Chan. Prac.*, 146 *and* 147.

GRASON, J., delivered the opinion of the Court.

This appeal is taken from an order of the Circuit Court for Prince George's County, ratifying a trustee's sale. By an agreement of the counsel of the respective parties, filed in the case in this Court, the purchaser at the trustee's sale, as well as the exceptants to its ratification, are made parties appellants.

The only question raised by the exceptions is whether the executor, who was also appointed by the will, guardian of the infant devisees, was a "credible" witness to the will and competent to prove it in the Orphans' Court. Section 301 of Article 93 of the Code does not define who are *"credible"* witnesses, and we are therefore obliged to look to other sources for its meaning. In the case of *Wyndham vs. Chetwynd*, 1 *Burr.*, 417, Lord MANSFIELD, in considering the competency of witnesses to prove a will, found it necessary to consider the meaning of the word *"credible,"* as used in the Statute of 29 Charles II., chap. 3, and he said that it had a clear, precise meaning, and was never used as synonymous to *competent*, but that when applied to testimony, it presupposes the evidence *given*. He further says that persons undoubtedly *"credible"* cannot be witnesses under particular circumstances, while persons manifestly *incredible* may be and often are witnesses; and he held that it would be absurd to make the essential solemnity of the will depend upon the *credibility* of the witnesses. He concludes that the word *"credible" "slipped"* into the Statute by mistake, or through want of attention to the impropriety of using it, and he thinks that it does not mean *competent*, because

the use of the word *witnesses* implies persons *competent* to testify. That distinguished Judge then uses the follow-ing language : " But what sense soever is put upon the word ' *credible,*' the Statute leaves the question just as it was ; for it does not declare who are, or are not credible, or (if it is supposed to mean *competent,*) who are compe-tent, or who are incompetent." In that case it was held that creditors were competent to prove the will, although it charged the payment of debts upon the land, the debts having been paid. Judge CHASE, in delivering the opinion of the General Court, in the case of *Shaffer's Lessee vs. Corbitt,* says that the word " *credible*" must be " rejected as superfluous and nugatory ; for competency is included in the term *witness,* so that the clause must be considered as if it stood without the word *credible.*" In that case the General Court decided that a legatee under a will was a competent attesting witness to the will for the reason that he had no interest under the will *at the time of the attestation,* the will being ambulatory during the life of the testator, but that he was not a competent witness *to prove the will* without releasing his legacy, and upon appeal the Court of Appeals affirmed the judgment. *Shaffer's Lessee vs. Corbitt,* 3 *H. & McH.,* 532.

In the recent case of *Higgins, et al. vs. Carleton & Scaggs,* 28 *Md.,* 140, this Court said that " *credible*" as used in the Statute means *competent to testify at the time of attestation.* If then a legatee, or creditors, the payment of whose debts the will charged upon lands, were com-petent witnesses *at the time of attestation* as decided by the cases above cited, there can be no reason for saying that an executor or guardian appointed by the will, was not a competent attesting witness at the *time of attesta-tion,* under the rules of the common law. He would not, however, be competent to *prove the will,* for the reason that at that time he had an interest under the will. Sir WM. BLACKSTONE says, that all persons in general are capable

of attesting a will as witnesses who are not infamous, insane or so young as to want discretion. 3 *Bl. Com.* ; *Shaffer's Lessee vs. Corbitt*, 3 *H. & McH.*, 531. It would seem therefore, that the common law required no particular or special qualifications in persons, to enable them to be attesting witnesses to wills. No difficulty was presented until the testator died, the will took effect and the attesting witnesses recalled to prove the will. The rule of the common law then interposed and prevented all parties, who were interested in the matter or proceeding then pending, from testifying therein. To prevent wills from being rendered void by such means, the Statute of 25 Geo. II., chap. 6, was passed, by which all interest given by the will to an attesting witness, was declared to be null and void. This Statute has been adopted in this State, and is to be found in Kilty. And so is the law now in England under the Statute. 1 *Vict., chap.* 26. At common law, therefore, any person who was not infamous, insane, or so young as to be wanting in discretion, was a competent subscribing witness to a will at *the time of attestation*, because at that time, no one could have any fixed interest under the will, as it might be altered or destroyed at any time during the testator's life. It was only after the testator's death that the will took effect, and the rights and interests of legatees and others vested, and they then became incompetent to prove the will by reason of their interest. But, most of the disabilities imposed by the common law, have been removed by the Act of 1864, chap. 109, and especially has incompetency on account of interest been swept away. Unless that Act excepts from its operation witnesses to wills, we think it clear that parties who take an interest under a will are competent witnesses to prove it. That Act provides, that "No person offered as a witness, shall hereafter be excluded by reason of incapacity from crime, or interest, from giving evidence, either in person

or by deposition, according to the practice of the Courts, in the trial of any issue joined or hereafter to be joined, or of any matter or question, or on any inquiry arising in any suit, action or proceeding, civil or criminal, in any Court, or before any Judge, jury, justice of the peace, or other person, having, by law or by consent of parties, authority to hear, receive and examine evidence ; but, that every person so offered may and shall be admitted to give evidence, notwithstanding that such person may or shall have an interest in the matter in question, or in the event of the trial of any issue, matter, question or inquiry, or of the suit, action or proceeding in which he is offering as a witness, &c."

The only objection urged to the validity of this will, is that Morris was an incompetent witness, he having been named by the will, executor and guardian. The due execution of a will, and the testamentary capacity of the testator at the time of execution, are matters to be inquired into by the Orphans' Court. It is a "*proceeding,*" or "*inquiry*" in a "*Court*" of the State, "*having authority to hear, receive and examine evidence,*" touching the matter of inquiry. Persons offering as witnesses in such a "proceeding" or "inquiry," are by the very terms of the Act, made competent, notwithstanding they may be interested in establishing the will. Parties having an interest may also, by the express terms of the Act of 1864, testify on "the trial of any issue." An executor, legatee or other person taking an interest under a will, is therefore competent to testify in the trial of the issues sent by the Orphans' Court to any Circuit Court for trial, in order that the Orphans' Court might be aided and advised by the verdict of a jury in determining whether or not a will offered for probate had been duly executed, and whether the testator had at the time of its execution, mental capacity to make it. If competent to testify on the trial of such issues in the

Circuit Court, can it be consistently held that they are *incompetent* to testify to the same facts, relating to the same subject-matter in the Orphans' Court, or that they were not competent subscribing witnesses to the will at the time of its execution? We think it clear that, at common law, there could be no incompetency of subscribing witnesses to wills *at the time of attestation,* on account of interest in or under the will, but that persons who took an interest under the will, were incompetent to *prove the will, after the death of the testator,* solely because they were interested in establishing the will *at the time* they offered to testify, and that all incompetency by reason of such interest, has been removed by the Act of 1864, ch. 109.

It was very earnestly argued that no persons, except those who are disinterested should be permitted to be subscribing witnesses to wills, in order that testators, who are frequently ill and feeble, and liable to be imposed upon at the time their wills are made, as well as heirs at law, may be protected from undue influences, importunities, impositions and frauds. We have shown that no persons can have an interest under a will *at the time of execution,* and ordinarily, it is not to be presumed that the attesting witnesses are made acquainted with the contents of the will, when they are called upon to subscribe. Neither Lord MANSFIELD nor Judge CHASE supposed that much danger from imposition or fraud, could result from permitting legatees to be attesting witnesses. But be this as it may, we have no power to alter or modify the law, our sole duty being to administer it as we find it upon the statute book.

The order appealed from will be affirmed, and the cause remanded for further proceedings.

*Order affirmed and*<br>*cause remanded.*

(Decided 2nd July, 1873.)