## RAYMOND C. McGARVEY, JR. *v.* JOSEPH J. McGARVEY ET AL.

[No. 125, September Term, 1978.]

*Decided September 12, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Richard Rubin,* with whom were *James T. Barbour* and *Thomas H. Carolan* on the brief, for appellant.

*Sylman I. Euzent,* with whom was *George A. Lahey* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Maryland Code (1974), § 4-102 of the Estates and Trusts Article (formerly Art. 93, § 4-102) provides that "every will shall be ... attested and signed by two or more credible witnesses in the presence of the testator." A provision requiring witnesses to attest to a will has been part of the statutory law of this state since 1798 (see ch. 101 of the Acts of 1798), and a will not attested by the requisite number of subscribing witnesses is invalid. *See Van Meter v. Van Meter,* 183 Md. 614, 616, 39 A.2d 752 (1944); *Shane v. Wooley,* 138 Md. 75, 77, 113 A. 652 (1921). The issue in this case is whether a person convicted of attempted subornation of perjury may

validly attest to the execution of a will offered for probate in Maryland.

Appellant Raymond C. McGarvey, Jr., personal representative of the estate of Helen McGarvey Saul, offered for probate in the Orphans' Court of Montgomery County a document executed on July 15, 1969 purporting to be Mrs. Saul's last will and testament. Appellee Joseph J. McGarvey filed a caveat contesting the validity of the alleged will on multiple grounds, one of which was that one of the two subscribing witnesses, Raymond C. McGarvey, Sr. (McGarvey, Sr.), who was convicted in 1935 of attempted subornation of perjury in the District of Columbia, was not competent or credible to act as an attesting witness to the will. The caveator based his challenge on the provisions of Maryland Code (1957), Art. 35, § 1, in effect in 1969, which provided that "no person who has been convicted of the crime of perjury shall be admitted to testify in any case or proceeding whatever . . . ." [1]

After the issues raised by the caveator were certified to the Circuit Court for Montgomery County for a jury trial, the appellee filed a motion for summary judgment on the issue of whether McGarvey, Sr.'s conviction rendered him an incredible or incompetent witness not qualified to act as an attesting witness to the will. The court (Frosh, J.) granted the motion, thereby denying probate to the alleged will. It held that a credible witness is one "who is competent to testify at the time that the attestation of that person was made," and noted that an individual convicted of perjury is not a competent witness in Maryland. Relying upon *State v. Devers and Webster,* 260 Md. 360, 272 A.2d 794, *cert. denied,* 404 U.S. 824 (1971), the court held that subornation of perjury is in substance the same as perjury; it concluded that McGarvey, Sr.'s conviction of attempted subornation of perjury was "by Maryland standards . . . the same as a conviction of perjury" and that the witness was therefore not competent to attest

---

1. Article 35, § 1 has been recodified as Maryland Code (1974), §§ 9-101 to 9-105 of the Courts and Judicial Proceedings Article. In pertinent part, § 9-101 states: "Unless otherwise provided in this subtitle: (1) A person shall not be excluded from testifying in a proceeding because of incapacity from crime or interest in the matter in question." And § 9-104 provides: "A person convicted of perjury may not testify."

to the execution of the will. The caveatee appealed to the Court of Special Appeals. We granted certiorari prior to decision by that court to consider the important issue raised in the case.

We think the lower court erred in concluding that attempted subornation of perjury was the equivalent of perjury under the statute. We shall not, however, reverse the judgment on that ground since the statute has no application whatsoever to attesting witnesses to a will. The matter of disqualification of such witnesses is controlled entirely by the common law which we today hold does not bar a person convicted of any crime, including perjury, from performing the limited function of acting as a subscribing witness to a will, as opposed to testifying in court in proof of the will.

In *Shaffer et al. v. Corbett,* 3 H. & McH. 513 (1797), the Court considered whether, under the common law rule that interest in a will would disqualify a beneficiary from testifying about it, an attesting witness who was the husband of a devisee under the will was a "credible" witness for the purpose of proving the will. In reaching its determination that the witness could testify to prove the will if both he and his wife released their interests under it, the Court initially confronted the question of whether the witness met the requirement of "credibility" so that his attestation to the will could be considered in deciding whether the necessary number of attesting witnesses had been obtained. Since a question of a person's credibility as a witness could not arise until he was sworn as a witness, the Court declared that the statutory requisite that an attesting witness be "credible" was a misnomer, and that word "must be rejected as superfluous." *Id.* at 531. Otherwise, it said, the jury would be required to conduct an inquiry into the credibility of every witness to a will before the court could admit the will to probate.

Citing Blackstone's *Commentaries,* the Court in *Shaffer* stated that any person who is not "infamous, insane, or so young as to want discretion" is capable of being an attesting witness to a will. *Id.* It said that "[e]very person who attests a will as a witness must be competent to attest the will at the

time of attestation," *id.* at 532, so that an event occurring subsequent to attestation would be irrelevant in establishing the competency of a subscribing witness and the facial validity of the executed will. The Court concluded that the devisee's husband was a "credible" (*i.e.* competent) witness to attest the will, since at the time of attestation he was not under any disability resulting from his wife's being named as a beneficiary in the will. This was so, the Court reasoned, because until the time of the testator's death no interest would arise under the will, but only the mere possibility of a gift that would be insufficient to render an attesting witness incompetent. But, the Court continued, once the testator died, the interest of the witness would vest and he would not then be competent to testify in court to prove the will unless he renounced his interest under it. The Court held that, upon the execution of a release of his and his wife's interest under the will, the husband was a credible witness for the purpose of proving the will. *Id.* at 535.

In *Estep v. Morris,* 38 Md. 417 (1873), the Court was asked to consider whether a subscribing witness to a will who was appointed under it as executor and guardian of several infant beneficiaries was a "credible" or competent witness to attest to and prove the will despite his interest in it. In concluding that the word "credible" was surplusage as applied to attesting witnesses, the Court noted that "the common law required no particular or special qualifications in persons, to enable them to be attesting witnesses to wills," *id.* at 425, but noted the existence of common law disqualifications for infamy, interest, insanity, and infancy. The Court observed that ch. 109, § 1 of the Acts of 1864 (later codified as Art. 35, § 1 and now as §§ 9-101 to 9-105 of the Courts Article) removed some of these disabilities. That statute provided:

> "No person offered as a witness shall hereafter be excluded by reason of incapacity from crime or interest, from giving evidence, either in person or by deposition, . . . in any suit, action or proceeding, civil or criminal, in any court, . . . notwithstanding that such person may or shall have an interest in the matter in question and notwithstanding that such

> person offered as a witness may have been previously convicted of any crime or offense; *but no person who has been convicted of the crime of perjury shall be admitted to testify in any case or proceeding whatever . . . . "* (Italics supplied.)

*Estep* pointed out that under the statute, persons who took an interest under a will were rendered competent to prove the will as witnesses after the testator's death, since the common law incompetency by reason of interest had been eliminated from the law.

As in *Shaffer,* the *Estep* Court emphasized the difference between competency to attest to a will and competency to testify in proof of the will, and the effect of that distinction when an attesting witness would gain some interest under the will:

> "We think it clear that, at common law, there could be no incompetency of subscribing witnesses to wills *at the time of attestation,* on account of interest in or under the will, but that persons who took an interest under the will, were incompetent to *prove the will, after the death of the testator,* solely because they were interested in establishing the will *at the time* they offered to testify, and that all incompetency by reason of such interest, has been removed by the Act of 1864, ch. 109." *Id.* at 427 (emphasis in original).

While this statement makes it clear that ch. 109 removed interest from the category of disabilities which, at common law, would render a witness incompetent to testify to prove a will, it does not directly address the applicability, if any, of the statute to the competency of a witness who, like McGarvey, Sr., merely attests to the execution of the will. However, the repeated and lengthy discussion in *Estep* concerning the distinction between competency to attest to a will and competency to prove the will would be mere surplusage if the Court thought that ch. 109 had eliminated the common law requirement for determining both competency to attest and competency to prove a will. Close

examination of *Estep* and subsequent cases which discuss ch. 109 persuades us that the statute is determinative only of a witness' competency to testify in proving a will, and that it does not control the question of the competency of attesting witnesses. *See Leitch v. Leitch,* 114 Md. 336, 340, 79 A. 600, 602-03 (1911); *Hammett v. Shanks,* 41 Md. 201, 219 (1874); *Harris v. Pue,* 39 Md. 535, 549 (1874).

We have said that an attesting witness is "credible" if he is "competent to testify at the time of attestation." *Estep, supra* at 424. *Accord, Higgins v. Carlton,* 28 Md. 115, 140 (1868). Since Art. 35, § 1 does not address the issue of an attesting witness' competency, we necessarily turn to the common law to determine if McGarvey, Sr. was a "credible" witness to the alleged will of Mrs. Saul.[2] At common law, a witness could not validly attest to a will, if, at the time of attestation, he was insane, so young as to want discretion, or guilty of an infamous crime. *Estep, supra* at 425; *Shaffer, supra* at 531. We need here consider only the last of these disabilities.

In defining "infamous crimes," we have said that "[t]he crimes which the common law regarded as infamous because of their moral turpitude were treason, felony, perjury, forgery and those other offenses, classified generally as *crimen falsi,* which impressed upon their perpetrator such a moral taint that to permit him to testify in legal proceedings would injuriously affect the public administration of justice." *Garitee v. Bond,* 102 Md. 379, 383, 62 A. 631, 633 (1905). At common law, perjury was the wilful giving of a false oath (a corrupt sworn statement made without sincere belief in its truthfulness) in a judicial proceeding in regard to a material matter. R. Perkins, *Criminal Law* 454 (2d ed. 1969), *citing* 4 W. Blackstone, *Commentaries* * 138; R. Anderson, *3 Wharton's Criminal Law and Procedure* 646 (1957). Subornation of perjury, at common law, was defined as the corrupt procurement of perjured testimony. Like perjury, it

---

2. *Cf.* Romer v. Jaecksch, 39 Md. 585, 591 (1874) (chapter 109 of the Acts of 1864, while rendering parties competent to testify without regard to interest, does not otherwise act to change the other rules of evidence at common law); Friend v. Hamill, 34 Md. 298, 307 (1871); Ward v. Leitch, 30 Md. 326, 334 (1869).

carried the taint of infamy. Perkins, *supra* at 466; Anderson, *supra* at 687. To convict of subornation of perjury, it was necessary to show that perjury was actually committed by someone other than the defendant, that the defendant induced the other to testify as he did, and that the defendant knew or believed this testimony would be a false oath. *See State v. Devers and Webster,* 260 Md. 360, 372, 272 A.2d 794, *cert. denied,* 404 U.S. 824 (1971). *See also Petite v. State,* 262 F.2d 788, 794 (4th Cir. 1959), *vacated and remanded on other grounds,* 361 U.S. 529 (1960); Perkins, *supra* at 466. The same proof of the perjured statement is required for subornation of perjury as for perjury, although subornation is a separate and distinct offense.

To constitute an attempted subornation of perjury, the act of the defendant must be one that would have resulted in subornation of perjury on his part and in perjury on the part of the person attempted to be suborned, if the defendant had been successful. Anderson, *supra* at 689; Perkins, *supra* at 467-68. The attempt to suborn a prospective witness to commit perjury is a common-law crime separate and distinct from subornation of perjury. *Commonwealth v. Billingsley,* 160 Pa. Super. 140, 145, 50 A.2d 703, *aff'd per curiam,* 357 Pa. 378, 54 A.2d 705 (1947), *quoted in Tipton v. State,* 8 Md. App. 91, 96-97, 258 A.2d 606 (1969). Although it must be shown that the testimony would have been perjury had it been given, in order to convict of attempted subornation it is necessary to prove, in addition, that the accused procured or attempted to procure the witness' agreement to commit perjury.

We need not decide whether attempted subornation of perjury is, because it involves the element of falsehood, properly classified with perjury and subornation, as an "infamous" crime. We believe that "the dead hand of the common-law rule ... should no longer be applied" to disqualify *as an attesting witness to a will* one who has been convicted of an "infamous" crime. *See Rosen v. United States,* 245 U.S. 467, 471, 38 S. Ct. 148, 62 L. Ed. 406 (1918) (holding that a witness who had been convicted of forgery, an "infamous" crime at common law, was competent to testify in a federal court).

As we have said, the disability of an attesting witness by reason of his conviction of an infamous crime is one imposed by the common law and not by statute in Maryland. Since this restriction on an attesting witness' competency is a rule of common law, it is subject to change by the courts. *See State v. Buchanan,* 5 H. & J. 317, 365-66 (1821), *quoted in Pope v. State,* 284 Md. 309, 341-42, 396 A.2d 1054, 1073 (1979):

> "Whether particular parts of the common law are applicable to our local circumstances and situation, and our general code of laws and jurisprudence, is a question that comes within the province of the Courts of justice, and is to be decided by them. The common law, like our Acts of Assembly, are subject to the control and modification of the Legislature, and may be abrogated or changed as the General Assembly may think most conducive to the general welfare; so that no great inconvenience, if any, can result from the power being deposited with the judiciary to decide what the common law is, and its applicability to the circumstances of the State, . . . ."

We have frequently stated that "it is our duty to determine the common law as it exists in this State . . . ." *Ass'n of Taxi Oprs. v. Yellow Cab Co.,* 198 Md. 181, 204, 82 A.2d 106, 117 (1951), and cases cited therein. Moreover, the doctrine of *stare decisis* "is not to be construed as preventing us from changing a rule of law if we are convinced that the rule has become unsound in the circumstances of modern life." *White v. King,* 244 Md. 348, 354, 223 A.2d 763, 767 (1966). *Accord, Pope v. State, supra; Hearst Corp. v. St. Dep't of A. & T.,* 269 Md. 625, 643-44, 308 A.2d 679 (1973). We note that the modern trend among courts has been to remove disabilities from witnesses, *see, e.g., Rosen v. United States, supra; Schoppel v. United States,* 270 F.2d 413, 415-16 (4th Cir. 1959), and we think that the General Assembly, in enacting ch. 109 and its successor statutes, indicated its belief that conviction of a crime (other than perjury) is no longer necessarily dispositive of a testifying witness' veracity.

We see no reason why a criminal conviction, including

perjury, should automatically bar anyone in this State from performing the largely formal ritual of attestation. We, therefore, hold that the common-law rule which disqualifies one convicted of an "infamous" crime from attesting to wills, is no longer applicable in this State. Any other result would be a needless trap for the unwary testator who, by failing to discover an attesting witness' prior criminal record, risks having his will declared void. The appellee's motion for summary judgment should not have been granted, and since McGarvey, Sr. was a "credible" witness under § 4-102 of the Estates and Trusts Article, summary judgment on that issue should have been entered in favor of the appellant.

> *Judgment of the Circuit Court for Montgomery County reversed; case remanded to that court for further proceedings; costs to be paid by appellee.*