Mr. Justice Hagner
delivered the opinion of the Court:
It appears by the bill that Julia C. Brent departed this life siesed of sublot A, in square 685, in Washington City. She was unmarried, and her brother, George Brent, and her sister, Mrs. Chilton, are her only heirs at law.
The complainant, as committee, alleges that he has entered into a contract to convey the interest of George Brent in the lot to the defendant, Perkins; and that the other defendants have also agreed to convey their interest to the same person; and this bill was filed to procure a ratification by the Equity Court of the contract thus made by the committee.
Julia C. Brent left a last will and testament, by which she devised and bequeathed to her executor all her property, real, personal and mixed, in trust, to hold the same, and collect and manage the property according to his best discretion, and apply the profits to the support and maintenance of her aunt, Emily C. Brent, during her life, or so long as any part of it should remain unexpended; and upon the death of Emily C. Brent, in trust to transfer any unexpended residue to Mrs. Chilton, the aunt of the testatrix.
The will was signed before three witnesses, as is required by our laws in case of wills of real estate, one of whom was Emily C. Brent; and its due execution was testified to by her and another of the attesting witnesses under a commission in this cause.
If the devises and bequests to Emily C. Brent are valid, then George Brent has no interest in the lot of ground referred to in the bill; if they are void, George Brent and *102 Mrs. Chilton are entitled to the property as heirs at law of the testatrix.
It is insisted, on the part of the complainant, that Emily C. Brent, being an attesting witness to the will, can take no interest under it, by force of the Statute of 25 George II, chap. 6, sec. 1, which provides “That if any person shall attest the execution of any will or codicil which shall be made after the 24th day of June, in the year of our Lord 1752, to whom any beneficial devise, legacy, estate, interest, gift or appointment of or affecting any real or personal estate, other than and except charges on lands, tenements or hereditaments for payment of any debt or debts, shall be thereby given or made, such devise, legacy, estate, interest, gift or appointment, shall, so far only as concerns such person attesting the execution of such will or codicil, or any person claiming under him, be utterly null and void; and such person shall be admitted as a witness to the execution of such will or codicil, within the intent of the said act, notwithstanding such devise, legacy, estate, interest, gift or appointment mentioned in said will or codicil.”
That this statute is in force within this District cannot be questioned. Its title and its eleventh section declare that it was intended to apply to the colonies. Kilty, p. 253, declares that there is nothing in the testamentary law of 1798 to interfere with its provisions; and it was recognized as in force in Maryland from its passage to the date of the cession of the District.
Mr. Darlington, the executor named in the will, and Emily C. Brent in their answers claim that the devises and bequests to the latter are valid and operative, and hence, that George Brent and Mrs. Chilton have no interest in the lot in controversy; and the case is certified to this Court by the justice holding the Equity Court for the decision of this question.
The words of the statute so expressed declare that any beneficial interest devised or bequeathed to a person who *103 becomes ail attesting witness to a will, shall “ be utterly null and void; ” that unless some statutory provision can be shown, repealing or controlling this provision, there can be no doubt that the devises and bequests in favor of Emily C. Brent must fail of effect.
It is insisted, on behalf of the defendants, that the Evidence Act of 1864 (sec. 876, R. S. D. 0.) has the effect of annulling this provision of the Statute of 25 George II. That act declares that “On the trial of any issue joined, or of any suit, action or other proceeding, in any court of justice in the District, the parties thereto and the persons in whose behalf such action or proceeding may be brought or defended, and all persons interested in the same, shall, except as provided in the following section, be competent and compellable to give evidence,” etc.
If the case had not already been specially provided for by the Statute of George, there is no doubt the Gourts might have held that, under the Evidence Act of 1864, an attesting witness might be a competent witness in a “ proceeding brought” to prove the will. But we have seen that the concluding words of the English statute had already expressly declared that such attesting witness “shall be admitted as a witness to the execution of such will or codicil, within the intent of the act, notwithstanding such devise, legacy,” etc.; and hence if the act of 1864 were held to declare admissible the testimony of attesting witnesses to wills it would only have been declaratory of what had existed in this portion of -the District, as the undoubted law, for more than one hundred years.
The act of 1864 says nothing of the validity or invalidity of devises to attesting witnesses. It contains no clause of repeal of any of the provisions of the act of George II; and if it works any such effect, it must be because of some manifest repugnancy between the new law and the English statute. According to the settled rules of construction, if the two statutes may intelligently stand together, th.ey shall *104 both stand; and we can perceive no reason whatever why they may not both stand — each broad enough to allow the testimony of an attesting witness to be received, but the older law still invalidating any devise to such attesting witness.
The contention of the defendants, however, seems to be, that, as the design and purpose of the Statute of George II was to provide only for the competency of attesting witnesses, whatever was said in that statute respecting the invalidation of devises was merely incidental to the main purpose of the statute, and was to be effective only in connection with its provisions as to competency; that the act of 1864, in different terms, undertook to provide for the competency of such witnesses, as a substitute for the Statute of George II; and when the new law took the place of the old one the old provision as to forfeiture, as a condition accompanying the admission of the witnesses as competent, became inoperative.
We are not able to coincide in this ingenious statement of the effect of the act of 1864. At the passage of the act of 1864 the Statute of George II was as fully in force in this District as any act of Congress. In express terms it invalidated devises to attesting witnesses; and that statute must be respected and obeyed by the courts until it has been repealed in one of the modes recognized by law; and we see nothing in the act of 1864 that can accomplish that end.
Nor can we agree that the invalidation of devises to attesting witnesses is to be regarded as a matter of secondary importance in the Statute of George. While Parliament was making a provision which would prevent an attesting witness from refusing to testify to the execution of a will in which he was a beneficiary, unless after extorting from the other devisees the payment of his devise, it took special care to provide first, and with great positiveness, that no attesting witness, who might have induced a dying man to include him in the will, should profit by his craft, but that *105 his devise or bequest should be utterly null and void; and it was after this provision had been inserted that the clause admitting attesting witnesses to testify was added.
The evil thus first provided against was a far more serious one than the occasional failure to prove a will'. In the latter case the estate would simply have devolved upon the heir, where it naturally belonged. But all could realize the pitiable condition of a dying man, to whom temporal possessions seem worthless in comparison with a few moments of peace, and who might easily be persuaded, by designing people surrounding him, to accept suggestions that would be rejected, or never made, if persons not interested to procure the insertion of such provisions in the will were necessarily called in as witnesses; for if one of the beneficiaries might be admitted as an attesting witness, all three of the attesting witnesses might equally be beneficiaries; and those with whom the law surrounds the testator for the protection of himself and his estate, might thus in safety plot to spoil him of his possessions, and then by their own testimony secure the benefits of their imposition.
The defendants have referred us to several authorities, as sustaining their view. Without pausing to discuss the cases in 23 Alabama and 78 Missouri, we content ourselves with saying that they do not, when carefully examined, at all sustain the defendant’s contention.
Two cases in Maryland were also referred to. In Estep vs. Morris, 38 Md., 417, it was decided that an attesting witness, who was named in the will as executor and guardian of the testator’s infant children, was a competent witness to prove the will since the passage of the Maryland Evidence Act, in 1864. But: 1, the attesting witness there was not given any beneficial devise or legacy, etc., by the will; and the Act of George II expressly applies only to attesting witnesses, who are beneficiaries under the will; and, 2, the case only decides that the attesting witness was competent to prove the will although named as executor, but does not *106 decide whether he could have retained a devise, if the will had bestowed such a beneficial interest upon him, which is the question before us.
In Harris vs. Pue, 39 Md., 549, it was held that, under the act of 1864, a beneficiary under a will of personalty was a competent witness to prove the will. But this decision does not support the defendants’ position, for several reasons: First, the will there in question was a will of personalty only; and it has been settled, overruling Sir Wm. Grant and 17 Vesey, 508, Lee vs. Summergill, that the 25th of George II has no application to a mere will of personalty; Poster vs. Banbury, 3 Sim., 40; Emanuel vs. Constable, 3 Buss., 436.
In the latter case, the vice chancellor places his decision upon the ground that the statute, as appears from its preamble and several of its sections, was evidently designed to apply only to such wills as required attesting witnesses; and as none were requisite to wills of personalty, such wills are not within the statute. •
A more conclusive reason why the case is not applicable, is to be found in the fact that Pue, the beneficiary, whose testimony was objected to, was not an attesting witness; and hence the statute has nothing to do with the case. It is not without significance, however, that although the Court ruled that the common law disability from interest, which alone would have disqualified the witness in that case, had been removed, yet the judges went on to say that it would be evidently wise and expedient for the legislature to modify the Evidence Act, so as to render beneficiaries under a will incompetent witnesses to establish it; and they say, in conclusion: “ Beason and good policy demand that there should be thrown around such instruments the safeguard and protection which may be secured by requiring that they shall be evidenced by the testimony of disinterested witnesses.”
'In our opinion, the clause in the Statute of George II, invalidating devises and legacies to attesting witnesses to *107 wills of realty, might very properly be extended to wills of personalty also; and that it would be most unfortunate if the existing provision should be impaired by statutory change or judicial construction.
We shall sign a decree, certifying to the Equity Court, that in our judgment the devises and bequests in the will of Julia C. Brent in favor of Emily G. Brent, an attesting witness to the instrument, “ are utterly null and vo'id,” in accordance with th$ terms of the statute in such case made and provided, and remanding the cause for further proceedings. ■
The only testimony now in the cause refers to the execution of the will and the relationship of the parties. Before a decree can pass as prayed, it will be necessary to establish the alleged contract, and show that its confirmation would be for the benefit and advantage of the lunatic, and the Other parties thereto, as required by the Act of 1785, chap. 82, sec. 12.