# MELVIN JOHN ADAMS *v.* STATE OF MARYLAND

[No. 310, September Term, 1967.]

*Decided May 7, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Howard B. Gersh,* with whom were *Feldman and Gersh* on the brief, for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *I. Elliott Goldberg, Assistant State's Attorney for Baltimore City* on the brief, for appellee.

PER CURIAM.

The appellant was found guilty by the court in the Criminal Court of Baltimore of rape, burglary and perverted practice. He was sentenced to 10 years on the rape offense, to 4 years on the burglary offense to run consecutively with the sentence for rape and to 2 years on the perverted practice offense to run concurrently with the sentence for rape. He contends on appeal that the evidence was not sufficient to sustain the convictions.

The offenses of which the appellant was convicted were committed against the person and dwelling of Hattie Robinson who occupied the second floor apartment at 406 E. Lanvale Street, she having rented it about a week before 23 February 1967. The appellant and his mother occupied the third floor apartment at the same address. Hattie Robinson testified that she was employed and earned $125 a week. About 8:30 P.M. on 23 February she went to the third floor apartment at the invitation of the appellant's mother. The appellant, his mother and a male friend of the appellant were there. The parties drank gin and beer, conversed and danced until about 11:30

P.M. when Hattie Robinson left and went to her apartment. She washed and "greased" her face and went to bed, clothed in a slip and a sweater. She went to sleep and awakened when she felt a hand on her side. There was a light burning in the hall about three feet from the bed and she saw the appellant. He had no clothes on. He jerked her head back and told her not to holler. He said, in four letter words of the street, that he was going to commit a perverted act on her and have sexual intercourse with her. He did both and she was afraid to resist. When the acts were completed she asked him to allow her to get a towel and he permitted her to get up. She tried to grab his clothing but was only able to get his shoes, jerked the door open and ran downstairs. She asked the occupant of the first floor apartment to help her but he said, "I'm not going to get involved," and she ran to her landlady's house at 411 E. Lanvale Street, told her what had happened and the landlady called the police. She told the police what happened, gave them the appellant's shoes and they took her back to her apartment. The police observed that the bathroom window of her apartment "was broken out, screen ripped out and shattered glass over the back part of the fire escape and inside the bathroom, and palm prints, some sort of greasy palm print over the window sill and part of the bathtub." A fire escape ouside the bathroom window led to the third floor apartment of the appellant. The window had been intact when she went to bed. The police arrested the appellant in his apartment. Upon examination of the prosecuting witness by a medical doctor the diagnosis was "evidence of penetration and ejaculation." The examination showed an old destruction of the hymen and the outlet was "parous (has had three children)."

The appellant testified that Hattie Robinson had suggested to him that he come to her apartment when his mother had gone to sleep. He did so and they had intercourse with her consent. He denied committing a perverted act. After the act was completed she asked for money. He said, "What money? I don't buy anything from no woman." She said, "If you don't pay me, I'm going to holler rape on me." He told her if she would wait until Friday when he got paid he would give her $10. She ran down the stairs and he realized he had locked

the door to his apartment and as he did not want his mother to know what was going on, he broke the bathroom window in Hattie Robinson's apartment and returned to his apartment by way of the fire escape.[1] Both the appellant's mother and a police officer testified that Hattie Robinson said the appellant had bitten her on the leg while he was performing the perverted act. Hattie Robinson denied this in her testimony. The medical examination showed no sign of such an injury.

The trial court found from the evidence before it that Hattie Robinson, a new tenant in the apartment house, went to visit the appellant's mother and after an evening of "conviviality" left at a fairly early hour because she was due for work early the next morning. "She left, went to bed, not expecting the Defendant as he would have me believe. She went to bed to go to sleep. I am firmly convinced that this Defendant, evidenced by State's Exhibit No. 1 (a photograph of the broken bathroom window), entered by way of the window in the bathroom, went in, found the prosecuting witness asleep, proceeded to rub her thigh, as she testified her side, did in fact commit a perverted act upon her and did in fact rape her. His story to me is utterly incredible, that she left the door open and he could walk in the door for an appointed purpose and would find it necessary to break a window to leave. I believe the prosecuting witness."

When a case has been tried by the lower court without a jury, this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses. Md. Rules, 1086. In performing its duty of judging the credibility of witnesses the

---

1. The bathroom window in the Robinson apartment was secured from the inside by a hook and eye at the top. Apparently the hook and eye were still secure when the police arrived. The appellant could not explain the presence of glass inside the bathroom. The window through which he said he entered into his apartment was locked but the appellant said, "All you got to do is shake my window and the lock will jump off and pull through and go through."

lower court may disbelieve the exculpatory statements made by the defendant. *Carwell v. State,* 2 Md. App. 45. The convictions were supported by substantial evidence and testimony believed by the lower court and we are unable to say that its judgments on the evidence were clearly erroneous. *Trout v. State,* 3 Md. App. 259; *Sutton v. State,* 2 Md. App. 639.

The appellant also contends that the lower court abused its discretion in denying his motion for a new trial. On cross examination of Hattie Robinson, counsel for the appellant asked her if she knew "anyone named James Hopkins" and she said she did not. At the hearing on a motion for a new trial counsel informed the court that Hopkins had been summoned but had not appeared. It appears from counsel's statements to the court that Hopkins told him that he knew Hattie Robinson. Counsel said that docket entries of the Municipal Court of Baltimore showed that ten days after the trial in the instant case, the prosecuting witness and a James Hopkins were arrested for disorderly conduct in front of the house of the prosecuting witness who gave her name as Hattie Hart.[2] There was no indication from the evidence produced at the trial or from statements made at the hearing on the motion for a new trial that Hopkins had any knowledge relevant to the substantive offenses with which the appellant was charged or directly material to his guilt or innocence. It appears clear that counsel desired Hopkin's testimony only to attempt to show that the prosecuting witness in fact knew Hopkins and thus to impeach her credibility. In his brief, the appellant characterizes the evidence proffered as "newly discovered evidence" and we shall assume it to be such for the purpose of decision.[3] The lower court denied the motion for a new trial.

In *Givner v. State,* 208 Md. 1, the Court said at page 4:

> "The general rule is * * * firmly established that
> the granting or refusal of a new trial lies within the

---

**2.** In her testimony at the trial Hattie Robinson said she was separated from her husband and that "my divorce is pending."

**3.** Newly discovered evidence was not one of the reasons given by the appellant in his written motion for a new trial.

sound discretion of the trial court and that no appeal will lie from its action thereon." [4]

The Court recognized an exception to the general rule where the trial court refused even to consider newly discovered evidence relating to a motion for a new trial. *Burley v. State,* 239 Md. 342, 344; see *Barbee v. Warden,* 220 Md. 647, 650. But we think it clear from the record before us in the instant case that the trial court, in denying the motion for a new trial did consider the evidence proffered and thus the instant case comes within the purview of the general rule.[5] The factual situation in *Givner v. State, supra,* was comparable to the instant case. In *Givner* it was contended that the trial court abused its discretion in refusing to permit the defendant to summon the two principal witnesses for the prosecution to testify at the hearing of his motion for a new trial or to summon the custodians of certain records to produce such records, all for the purpose of attacking the credibility of the two principal witnesses against him. The points upon which their veracity was attacked and the bases for the attack were, however, contained in documents submitted to the Supreme Bench through a petition and affidavit.[6] In the instant case the trial court did not comply with the appellant's request to issue a bench warrant for James Hopkins to testify at the hearing on the motion. However, the points upon which the veracity of the prosecuting witness was attacked and the bases for the attack were before the trial court

---

4. A 1965 amendment to the Maryland Rules added a new subsection 2 entitled "Newly Discovered Evidence" to Rule 764 b. A Committee note states that it relates solely to the time within which motions for new trials or other relief on the ground of newly discovered evidence may be filed and is not intended to make any change in the standards to be applied by the trial court in exercising discretion as to whether or not to grant a new trial.

5. The lower court said, at one point in the proceedings at the hearing: "I'll instruct the State's Attorney to investigate this for possible charges of perjury against her." The record does not disclose whether such investigation was made.

6. Chapter 667, Acts of 1965 abolished the practice in Baltimore City of having motions for a new trial heard and decided by the Supreme Bench of Baltimore City. See Md. Rules, 759, as amended 28 March 1966.

by what we assume to have been a proper proffer. In *Givner* the Court stated at page 6:

> "The gravamen of the appellant's motion for a new trial was that the principal witnesses for the prosecution had given untrue or perjured testimony on a number of matters which were set forth in detail in the petition. All of these instances, as the appellant's brief shows, were brought to the attention of the Supreme Bench. It seems perfectly evident that the Supreme Bench considered the purport and possible effect of this evidence; and the inference is strong (even in the absence of any opinion of the Supreme Bench) that that tribunal found the new evidence insufficient to warrant the granting of a new trial. In this we find no basis upon which to impute to the Supreme Bench any abuse of its discretion or any refusal to receive and consider evidence supplied by affidavit."

In the instant case the gravamen of the appellant's motion for a new trial was that the prosecuting witness had given untrue or perjured testimony on matters brought to the court's attention. We think it perfectly evident that the lower court considered the purport and possible effect of this evidence and found the new evidence insufficient to warrant the granting of a new trial. In this we find no basis upon which to impute to the lower court any abuse of its discretion or any refusal to receive and consider evidence proffered. See *McCoy v. State,* 236 Md. 632, cert. den. 380 U. S. 986.

*Judgments affirmed.*