# STATE OF MARYLAND *v.* DEVERS AND WEBSTER

[No. 200, September Term, 1970.]

*Decided January 8, 1971.*

*Motion for rehearing filed February 5, 1971; denied and opinion modified February 9, 1971.*

The cause was argued before HAMMOND, C. J., and MC-WILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*Francis X. Pugh, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*Francis X. Gaegler, Jr.,* with whom was *Arthur Dale Leach* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

Raymond G. Devers and Bryan D. Webster were jointly tried before a jury in the Circuit Court for Prince George's County. Devers was found guilty of subornation of perjury and Webster of perjury. In *Devers and Webster v. State,* 9 Md. App. 366, 264 A. 2d 291 (1970), the Court of Special Appeals reversed the convictions because it found error in the trial court's denial of motions for judgments of acquittal and for a new trial and remanded the cases for a retrial. We granted certiorari.

Devers' and Webster's convictions were the end product of a domestic dispute between Devers and his wife. In

August, 1968, Mrs. Devers had left her husband and had gone to live with Mrs. Bernice Anderson. During the period from September to December 1968, Mrs. Devers or Mrs. Anderson had sworn out four criminal warrants, charging Devers with stealing his own lawnmower, disorderly conduct, disturbing the peace and making harassing telephone calls on 29 November and 23 December 1968, the latter charge being in violation of Code (1957, 1967 Repl. Vol.) Art. 27, § 555A.

These four charges came on for trial in February 1969 in the Circuit Court for Prince George's County before Bowie, J., and a jury. At the conclusion of the State's case, motions for judgments of acquittal were granted as to all the charges except that involving the telephone calls allegedly made at 7:35 and at 9:10 on the evening of 29 November, which Devers then defended. Webster, called as a witness in Devers' behalf, testified that on the day when the telephone calls were alleged to have been made, he had flown Devers to Hancock, West Virginia, leaving Hyde Field in Prince George's County at approximately 12:30 p.m. and returning to the field at approximately 8:30 p.m. On cross-examination, Webster testified that he had not worked at the Chesapeake and Potomac Telephone Company in Silver Spring, Maryland, where he was employed, on 29 November. He said that he had worked on the 28th, which was Thanksgiving Day, but did not work on the 29th. Devers then took the stand and confirmed the story of the trip. The jury returned a verdict of not guilty.

Subsequently, Webster was indicted for perjury and Devers for subornation of perjury. The cases came on for trial in August, 1969, again before Bowie, J., and a jury.

There was testimony which both discredited and supported Devers' alibi. Both Mrs. Devers and Mrs. Anderson testified that they had recognized Devers' voice when the telephone calls were made. Mrs. Devers testified that she had seen her husband about 6 p.m. on 29 November in Lyle's Restaurant and again later that evening when he attempted to run his car into hers. Mrs. Anderson

said she had not seen Devers but had seen his car chasing Mrs. Devers', when she opened the garage doors to admit Mrs. Devers' car.

Herbert Palm, a telephone company foreman, testified that the company's work schedule showed that Webster had not worked on Thanksgiving Day, but had worked on the 4:00 p.m. to midnight shift on Friday, 29 November, and that a timecard, signed by Webster, bore this out. Edna May Rittershofer, a payroll processing supervisor for the telephone company, testified that the company's records showed that Webster had a holiday on Thanksgiving and worked on 29 November. Had he worked on Thanksgiving, he would have received $40 additional pay, which he had never claimed.

Creston Garner, Jr., Webster's immediate supervisor, called as a rebuttal witness by the State, testified that Webster was a switchman, scheduled to work on the 4:00 p.m. to midnight shift on 29 November; that two switchmen are the minimum who must be on duty; that between 4:00 p.m. and 5:00 p.m. each day, it is his practice to verify that they are on duty, and that if Webster had not reported by 5:00 p.m. on 29 November he would have "panicked immediately" and made a record of the fact, which he had not.

There was considerable testimony adduced in support of the alibi. No witness testified that he had seen Webster at work, although Webster conceded that it was improbable that he would not have been seen by the other switchman. Terry Harden, whose mother had previously stayed at Devers' house, testified that he had met Devers and Webster at Lyle's Steak House on the morning of 29 November and had left Hyde Field with them at 11:30 a.m. in Webster's plane to fly to West Virginia to look at some family properties. He took them to the West Virginia airport about 7:00 p.m., but did not return with them.

Stephen E. Ellis testified that he saw the plane leave Hyde Field at 12:30. There was introduced in evidence Webster's pilot log, which contained an entry respecting

the trip. Webster admitted that the entry had been made sometime later.

Vivian Springman, a practical nurse, worked for a registry run by Mrs. Lois Zagri. She testified that she and Mrs. Zagri had made an appointment to see Devers at Devers' house at 7:30 p.m. on 29 November. They went to Devers' house, and finding him not there, drove to Hyde Field where Webster's plane arrived at about 8:30 p.m. Devers took Webster somewhere, and then returned to his house where he again met Vivian Springman and Mrs. Zagri. Mrs. Zagri substantiated this testimony.

Webster repeated the testimony which he had given at the earlier trial concerning the trip to West Virginia, but explained that he had reported for work about 11:00 p.m. on 29 November, and had worked the eight hours shown on his timecard by staying on the job until 6:30 a.m. He admitted that he had been mistaken when he testified at the earlier trial that he had worked on Thanksgiving.

Devers reiterated the testimony he had given at the earlier trial about the trip to West Virginia, and denied that he had seen his wife at Lyle's Steak House, or had attempted to run her off the road.

Just before the State put on Creston Garner, Jr., as a rebuttal witness, counsel had a conference with Judge Bowie in chambers at the request of the State. There were present James E. Fannon, Jr., Assistant State's Attorney; Vincent J. Femia, Assistant State's Attorney; James E. Kenkel, Deputy State's Attorney, and Arthur Dale Leach, counsel for the defendants. The purpose of the conference was the State's desire to obtain a continuance so that an out of state witness could be produced. In the course of a long colloquy, which ultimately resulted in a denial of a continuance, Judge Bowie made two comments:

THE COURT: "* * * Now, Mr. Fannon [Assistant State's Attorney], let me say this, if this were the world's worst murder case, if this was

a seriously involved case, if it were not for the fact that I sat on these other cases and had thrown the other three out—there are certain indications that have come into this trial which indicate they weren't fully and completely resolved, which they were. Now, I am just trying to say that that is the fact. Here you have got a family squabble in here and this case should never have gone to trial. If it weren't for the fact I sat on those other cases, and if it weren't for my confidence the jury is going to acquit this man, I would give him a judgment of acquittal like that, and there isn't a court attendant that doesn't feel the same way about it. I don't know what has got in your craw, but I think this is one good reason why everybody is going to go out of office, really I do. I think this case is a disgrace. And I will say this to every one of you, it is an absolute disgrace. * * *"

* * *

"Somebody says out of the courtroom — the rumors that go all over the courthouse about what is going on here, and about some other criminal case that was involved, but I must say we are here to try this one case. And I will tell you if I hadn't sat in those others — and the people involved on the other side, there are such hard feelings by the phone company and by the people with Mrs. Devers, that the jury is going to get this case come no matter what. I am just going to let the jury determine it. I am not going to do it. But if I had to determine it I would throw it out in a minute."

The conference ended, and Mr. Garner testified. At the conclusion of all the evidence, the defendants renewed the motions made at the close of the State's case for judgments of acquittal. The motions were denied, and the case went to the jury, which returned guilty verdicts as

to both men. Devers' and Webster's motion for a new trial was denied and each of them was sentenced to two years' imprisonment, but the sentences were suspended.

On appeal, the Court of Special Appeals reversed on the ground that the trial court erred in denying the motions for judgments of acquittal and because the court failed to apply the proper test in considering the motion for a new trial.

On the first point, the court said:

"When a motion for judgment of acquittal is made in a jury case it is the function of the lower court to determine whether or not the evidence before it is sufficient in law to sustain a conviction. If it determines that it is, it should deny the motion and submit the case to the jury; if it determines that it is not, it should grant the motion and the case does not reach the jury. It is the function of this Court when the question is properly before it, to determine whether the lower court erred in denying a motion for judgment of acquittal. The test to be applied is whether the evidence shows directly or supports a rational inference of the facts to be proved, from which the jury could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. If there was such evidence there would be no error in denial of the motion; if there was no such evidence, denial of the motion would be reversible error. See *Williams v. State*, 5 Md. App. 450, 452-460.

"However, the instant case does not reach us with regard to the denial of the motions for judgment of acquittal in the usual posture. We think it fundamental to the rights of a defendant that the lower court deny a motion for judgment of acquittal only on the basis that it has considered the evidence adduced, and recognizing that its weight and the credibility of the

witnesses are matters for the jury, finds that the evidence in law was sufficient to sustain the conviction. We can only conclude that in the instant case the lower court's denial of the motion for judgment of acquittal made by each appellant at the close of all the evidence was influenced by other factors to the extent that the appellants were denied due process of law. Thus we must reverse the judgments and do so without reaching the question of the sufficiency of the evidence *per se.* We reach our conclusion from remarks made by the lower court. * * *" 9 Md. App. at 368-69.

* * *

"We are constrained to conclude that the court denied the motions for judgment of acquittal because it was leaving the question of guilt to the jury 'no matter what.' That the court was confident the jury would acquit was not a proper basis for a denial of the motions. Nor could the court properly slough its responsibility to decide whether or not the case should go to the jury because it had sat in other cases, apparently involving appellants, or because of 'hard feelings' on the part of the parties involved. We think appellants were entitled to have their motions determined by the court applying the proper test and that the record affirmatively shows that the motions were not so determined. * * *" 9 Md. App. at 370.

On the second point, the Court said:

"* * * We noted in *Pinkney* [*Pinkney v. State,* 9 Md. App. 283, 263 A. 2d 871 (1970)] that the test as to the sufficiency of the evidence with respect to the grant of a new trial is broader in scope than the test as to the sufficiency of the evidence with respect to the grant of a motion for judgment of acquittal. For in determining a

motion for judgment of acquittal the lower court does not weigh the evidence or judge the credibility of the witnesses; those matters are for the trier of fact. But in determining a motion for a new trial, the lower court must weigh the evidence and judge the credibility of the witnesses; only in so doing is it able to ascertain whether there is such a preponderance of proof in favor of the accused 'as to show that manifest injustice has been done by the verdict.' See *Johnson v. State,* 219 Md. 481, 483; *Brown v. State,* 237 Md. 492, 499. In denying the motion for a new trial the lower court [*i.e.,* Bowie, J.] disposed of the ground that the weight and sufficiency of the evidence did not support the conviction by asserting that the weight and sufficiency of the evidence were not for it. It said:

'We conclude that the weight and sufficiency of the evidence is for the jury to decide and not for the Court. Once the case goes to the jury, assuming that it properly is presented to the jury on a question of fact, then the weight and sufficiency of the evidence is totally for the jury and not for the Court to determine, on a motion for judgment of acquittal at the end of the State's case and at the end of the entire case, as to whether there is sufficient evidence to present a question of fact of guilt or innocence to the jury. We concluded, on the basis of the State's theory of the case, that they had presented sufficient to go to the jury and for the jury to consider it. Once this was done, of course, the weight and sufficiency was up to the jury.'

This was manifestly incorrect with respect to the grant of a new trial. It discards completely the safety valve as to improper verdicts which is established by the rule as to new trials and which is a *raison d'etre* in giving trial courts

discretionary power as to the grant of a new trial. The court here clearly did not consider the weight of the evidence in determining the motion before it. This was as much an abuse of its discretion as the refusal to consider newly discovered evidence. See *Burley v. State*, 239 Md. 342, 344; *Givner v. State*, 208 Md. 1." 9 Md. App. at 371-73.

We take a somewhat different view of the matter. We find error neither in the denial of the motions for judgments of acquittal nor in the denial of the motion for a new trial.

### The Motions for Judgments of Acquittal

One of the oddities of our practice is that by virtue of the Constitution of Maryland (1867) Art. XV, § 5, "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact." The history of this provision is treated in *Wyley v. Warden, Md. Penitentiary*, 372 F. 2d 742 (4th Cir. 1967), *cert. denied*, 389 U. S. 863, 88 S. Ct. 121, 19 L.Ed.2d 131 (1967). An amendment to our Constitution, which became effective 1 December 1950, left the basic concept undisturbed but added the proviso, "except that the Court may pass upon the sufficiency of the evidence to sustain a conviction." Prior to the adoption of this amendment, this Court had no power to review the sufficiency of evidence on appeal of a criminal case tried to a jury. Compare *Brown v. State*, 237 Md. 492, 499, 207 A. 2d 103 (1965) and *Giles v. State*, 229 Md. 370, 384, 183 A. 2d 359 (1962) with *Slansky v. State*, 192 Md. 94, 63 A. 2d 599 (1949).

The amendment had been implemented by Chapter 596 of the Laws of 1949, now Code (1957, 1967 Repl. Vol., 1970 Cum. Supp.) Art. 27, § 593:

"§ 593. Jury to be judges of law and fact; motion for judgment of acquittal on ground of insufficiency of evidence.

"In the trial of all criminal cases, the jury

shall be the judges of law, as well as of fact, except that at the conclusion of the evidence for the State a motion for judgment of acquittal on one or more counts, or on one or more degrees of an offense, may be made by an accused on the ground that the evidence is insufficient in law to justify his conviction as to any such count or degree. If the motion is denied, he may offer evidence on his own behalf without having reserved the right to do so, but by so doing, he withdraws his motion. The motion may be made at the close of all the evidence whether or not such motion was made at the conclusion of the evidence for the State. If the motion is denied the defendant may have a review of such ruling on appeal."

and by Rule 755:

"Rule 755. Motion for Judgment of Acquittal.

"a. *Supersedes Motion for Directed Verdict.*

The motion for a directed verdict of not guilty and the motion for an instruction that the evidence is insufficient in law to sustain a conviction are aboliﾕshed and the motion for judgment of acquittal shall be used in their place.

"b. *When Made.*

A motion for judgment of acquittal on one or more counts, or on one or more degrees of an offense, may be made by an accused at the close of the evidence offered by the State, or may be made at the close of all the evidence, whether or not such motion was made at the close of the evidence offered by the State. If the motion is not granted at the close of the evidence offered by the State, the accused may offer evidence without having reserved the right to do so, but by so doing, he withdraws his motion.

"c. *Action by Court.*

If the court on such motion or on its own motion determines that a judgment of acquittal should be granted, it shall direct the clerk to enter a judgment of acquittal on one or more counts, or one or more degrees of an offense which by law is divided into degrees, and to note that it has been entered by the direction of the court. If the case is tried before a jury it shall not be necessary for the jury by its foreman, or otherwise, to render a verdict."

which taken together, permit a defendant in a criminal case being tried before a jury to move for a judgment of acquittal at the close of the evidence offered by the State and again at the close of all the evidence, and in the event the motion is denied, the ruling may be reviewed on appeal, *Gray v. State,* 254 Md. 385, 255 A. 2d 5 (1969). As a practical matter this permits the court to which an appeal is taken to pass on the sufficiency of the evidence, *Giles v. State, supra.* The function of the appellate court is limited, however. It does not inquire into and measure the weight of the evidence to ascertain whether the State has proved its case beyond a reasonable doubt, *Brown v. State, supra,* 237 Md. at 497 but merely ascertains whether there is any relevant evidence, properly before the jury, legally sufficient to sustain a conviction, *Pressley v. State,* 244 Md. 664, 667, 224 A. 2d 866 (1966) ; *Royal v. State,* 236 Md. 443, 448, 204 A. 2d 500 (1964) ; *Tull v. State,* 230 Md. 596, 604, 188 A. 2d 150 (1963) ; *Lee v. State,* 224 Md. 260, 167 A. 2d 595 (1961) ; *Drouin v. State,* 222 Md. 271, 288, 160 A. 2d 85 (1960) ; *Wright v. State,* 219 Md. 643, 652, 150 A. 2d 733 (1959) ; *Briley v. State,* 212 Md. 445, 447, 129 A. 2d 689 (1957).

The application of this approach to the case before us is a simple one. If the jury chose to believe the State's witnesses and disbelieve the testimony of the defendants and their witnesses, as it obviously did, there was evidence legally sufficient to sustain the convictions. Under

its view of the case, the Court of Special Appeals never reached "the question of the sufficiency of the evidence *per se.*"

The offense of perjury consists of swearing falsely and corruptly, without probable cause of belief. To be willful, the false oath must be deliberate and not the result of surprise, confusion or bona fide mistake, *Brown v. State,* 225 Md. 610, 171 A. 2d 456 (1961) ; 3 Wharton, *Criminal Law and Procedure* §§ 1290, 1291 (Anderson ed. 1957) ; Code (1957, 1967 Repl. Vol.) Art. 27, §§ 435, 437. Maryland no longer requires that perjury be established by the direct testimony of two witnesses, as was the case at common law. It is enough that there is testimony of one witness and other independent corroborative evidence is of such a nature so as to be of equal weight to that of at least a second witness, thus foreclosing any reasonable hypothesis other than the defendant's guilt. *Brown v. State, supra,* 225 Md. at 616.

Subornation of perjury is the procurement of another to make a false oath, Code, Art. 27, § 438. Since subornation is, in substance, the same as perjury, the same proof of the perjured statement is required together with proof that the statement was procured by the accused, *Hammer v. United States,* 271 U. S. 620, 628, 46 S. Ct. 603, 70 L. Ed. 1118 (1926), but see *Boddie and Brooks v. State,* 6 Md. App. 523, 535, 252 A. 2d 290 (1969). Devers called Webster as a witness in the earlier trial, certainly knowing that Webster would testify about the plane trip, which Devers then substantiated by his own testimony. There was evidence, if believed, sufficient to sustain the convictions.

There remains, of course, the question of Judge Bowie's remarks during the conference in chambers. The Court of Special Appeals took these as an indication that Judge Bowie meant that the evidence was insufficient to sustain a conviction.[1] We do not read them in quite the same way. To us it seems obvious that Judge Bowie was irked

---

1. It should be noted that his remarks were made prior to Mr. Garner's testimony.

by the fact that the State's Attorney's office had permitted itself to become embroiled in what he regarded as no more than a family quarrel, which had aroused "hard feelings." Because he had sat in the earlier cases, where he had entered judgments of acquittal in three of the cases and the jury had returned a not guilty verdict in the fourth, Judge Bowie preferred that the perjury and subornation of perjury cases go to the jury "no matter what." The fact that Judge Bowie thought the jury would acquit was a conclusion based on his own appraisal of the weight of the evidence and the credibility to be given the witnesses, a function which was exclusively that of the jury. As it turned out, the jury looked at it differently.

There is no suggestion that it was his conclusion that there was no evidence, if believed by the jury, sufficient to sustain a conviction. This is essentially what Judge Bowie was saying when he denied the motions for judgments of acquittal:

> "Well, we think that nevertheless that has created a question of fact which the jury must resolve as we had indicated in chambers when we were on the record.[2] We feel that this case does present a question for the jury, a question of fact to determine whether or not the defendants are guilty as charged."

and at the hearing on the motion for a new trial repeated that the court could not substitute its opinion for that of the jury.

### The Motion for a New Trial

Rule 759 a, Motion for New Trial, provides:

> "A motion for a new trial shall be made pursuant to Rule 567 (New Trial). A motion for a new trial shall be heard by the court in which the motion is pending. The Court may grant a new trial if required in the interest of justice."

---

2. Here, Judge Bowie was referring to the Garner testimony.

374

See also Code, Art. 27, § 594.

The following is a quotation from Hochheimer, *The Law of Crimes and Criminal Procedure* § 184 at 209-10 (2d ed. 1904):

> "\* \* \* Upon conviction, a new trial may be ordered by the court, upon its own motion, or at the instance of the defendant, or one or more of several defendants, at any time before judgment, for any matter extrinsic to the record whereby it appears that there was a defect of substantial justice at the former trial. \* \* \* The matter of granting a new trial is discretionary with the trial court; but the defendant is entitled to have the application therefor passed upon and material evidence presented by him received.
>
> "The principal grounds for granting a new trial are, that the verdict was contrary to the evidence; newly discovered evidence; accident and surprise; misconduct of jurors or the officer having them in charge; bias and disqualification of jurors (disqualification not entitling to a new trial, however, if there was opportunity to challenge); misconduct or error of the judge; fraud or misconduct of the prosecution, *e.g.*, abuse of argument."

The opinion in *Pinkney v. State, supra,* would appear to go beyond the grounds enumerated by Hochheimer and would permit the trial court to weigh the evidence and consider the credibility of witnesses to determine not whether the verdict was against the preponderance of the evidence, but whether there was such a preponderance of evidence on the side of the defendant "as to show that manifest injustice has been done by the verdict, and to warrant the conclusion either that the jury have mistaken or failed to weigh the evidence properly, or to apply legal principles, or to arouse suspicion of corruption,

prejudice, or partiality on the part of the jury.",[3] 9 Md. App. at 296, and the opinion in *Devers, supra,* refers to a new trial as "the safety valve as to improper verdicts," which requires a consideration of the weight of the evidence, 9 Md. App. at 372-73.

As we shall shortly demonstrate, the Court of Special Appeals was in error in both *Pinkney* and *Devers* when it concluded that the test of the sufficiency of the evidence with respect to the grant of a new trial is broader in scope than with respect to the grant of a motion for judgment of acquittal.

It was long held that the ruling of the trial court on a motion for a new trial lay within the sound discretion of the trial court and could not be reviewed on appeal. See, for example, *Archer v. State, supra,* 45 Md. 457; *Myers v. State, supra,* 137 Md. 482; *Wilson v. State,* 181 Md. 1, 8, 26 A. 2d 770 (1942) ; *Quesenbury v. State,* 183 Md. 570, 572, 39 A. 2d 685 (1944) ; *Herring v. State,* 189 Md. 172, 55 A. 2d 332 (1947) ; *Haley v. State,* 200 Md. 72, 77, 88 A. 2d 312 (1952) ; *Williams v. State,* 204 Md. 55, 66, 102 A.2d 714 (1954) ; *Madison v. State,* 205 Md. 425, 433, 109 A. 2d 96 (1954). In *Quesenbury,* on appeal from the Circuit Court for Prince George's County, where the defendant alleged insufficiency of the evidence in support of his appeal from a denial of his motion for a new trial, Judge Melvin, speaking for the Court, said:

> "That this is a matter addressed directly and solely to the discretion of the trial court on a motion for a new trial, following the determination by the jury of the sufficiency of the evidence, is too plain for comment. This Court has repeatedly ruled in so many words that the question of the legal sufficiency of evidence in a criminal case to sustain a conviction is exclusively for the jury to determine. *Berger v. State,* 179 Md. 410, 20 A. 2d 146 [1941] ; *Deibert v.*

---

**3.** The quotation is from 5 Wharton, *Criminal Law and Procedure* § 2166 at 355, 356 (Anderson ed. 1957).

*State,* 150 Md. 687, 133 A. 847 [1926] ; *Willie v. State,* 153 Md. 613, 139 A. 289 [1927]." 183 Md. at 573.

In *Debinski v. State,* 194 Md. 355, 362, 71 A. 2d 460 (1950), there was an intimation that the denial of a motion for a new trial might be reviewable on appeal where there was a clear abuse of discretion by the trial court. This qualification was repeated in *Givner v. State,* 208 Md. 1, 7, 115 A. 2d 714 (1955) ; *Thomas v. State,* 215 Md. 558, 561, 138 A. 2d 878 (1958) ; *McCoy v. State,* 236 Md. 632, 204 A. 2d 565 (1964), *cert. denied,* 380 U. S. 986, 85 S. Ct. 1358, 14 L.Ed.2d 279 (1965) and in *Burley v. State,* 239 Md. 342, 344, 211 A. 2d 714 (1965).

*Givner v. State, supra,* 208 Md. 1 and *Burley v. State, supra,* 239 Md. 342, are authority for the proposition that the denial of a new trial where the motion is grounded on newly discovered evidence may well be just such a clear abuse of discretion as will make the denial reviewable.

The Court of Special Appeals has consistently followed the rule, subject to the exception, *Adams v. State,* 4 Md. App. 135, 241 A. 2d 591 (1968) ; *Stallard v. State,* 6 Md. App. 560, 252 A. 2d 267 (1969) ; *Elder v. State,* 7 Md. App. 368, 255 A. 2d 91 (1969).

It was not until *Pinkney, supra,* 9 Md. App. 283, however, that the Court of Special Appeals suggested, and not until *Devers, supra,* 9 Md. App. 366, that it invoked the proposition that the review of the denial of a motion for a new trial in a criminal case after conviction on a jury verdict called for a weighing of the evidence and a consideration of the credibility of the witnesses. This is not the teaching of our prior decisions which the Court of Special Appeals cited.

*Brown v. State,* 237 Md. 492, 207 A. 2d 103 (1965) and *Johnson v. State,* 219 Md. 481, 150 A. 2d 446 (1959), upon which *Pinkney* placed principal reliance, were both decided before Constitution, Art. IV, § 33 was amended in 1966. Prior to the amendment, § 33, which delineated

the jurisdiction of the Supreme Bench of Baltimore City, which consists of the judges of Baltimore's nisi prius courts, provided in part:

> "The said Supreme Bench of Baltimore City * * * *shall also have jurisdiction to hear and determine all motions for a new trial in cases tried in any of said Courts, where such motions arise either, on questions of fact, or for misdirection upon any matters of Law, and all motions in arrest of judgment, or upon any matters of Law determined by the said Judge, or Judges, while holding said several Courts;* * * *" (Emphasis supplied.)

It is the italicized portion which was deleted by the amendment.

When our predecessors were called upon to consider this provision as it stood prior to amendment in *Roth v. House of Refuge*, 31 Md. 330 (1869) they said:

> "It will be observed that the power given to this Court is large and comprehensive. If there be *any matter of law* determined by the judges in the several courts [of Baltimore City], except it be in cases of appeal from justices of the peace, it is liable to be reheard and determined by the Supreme Bench; the great object being to secure uniformity of decision, and greater deliberation of judgment than was practicable in the separate courts, presided over by a single judge." 31 Md. at 333. (Emphasis in original.)

We had occasion to comment on the provision in *Johnson v. State, supra*, 219 Md. at 483 where Judge (later Chief Judge) Prescott, speaking for the Court, said:

> "* * * This constitutionally granted power to hear motions for new trials is unusual, if not unique; such authority usually emanating from

legislative enactment or inveterate custom and usage.

"* * * *Often, where an appeal does lie the powers of review of the Supreme Bench in ruling upon the motion for a new trial are broader in scope than those of this Court. It may weigh the evidence in a criminal case even though the case was tried before a jury, and grant a new trial in its sound discretion.*" (Emphasis supplied.)

which was followed in *Brown v. State, supra,* 237 Md. at 499.

It should be remembered that *Johnson* and *Brown* were decided *after* the 1950 amendment of Art. XV, § 5 which gave the court, in the trial of a criminal case before a jury, the power to pass upon the sufficiency of the evidence to sustain a conviction, but *before* the 1966 amendment of Art. IV, § 33 which took from the Supreme Bench the constitutional grant of power which we had construed as entitling it to weigh the evidence in considering a motion for a new trial of a criminal case which had been tried before a jury. This grant of power, shared by no other court in Maryland, which we termed "unusual, if not unique" in *Johnson,* rested from 1867 until 1966 in the Supreme Bench of Baltimore City, and nowhere else.[4] It never extended to this Court, and would not have ex-

---

4. It is interesting to note that the General Assembly, possibly in anticipation of the amendment of Art. IV, § 33, enacted Chapter 667 of the Laws of 1965, which added a new § 262A to Art. IV of the Code of Public Local Laws of Maryland. This provision, which took effect 1 June 1965, may be found in Code of Public Local Laws of Baltimore City (1969) as § 22-40:

"*Motions For New Trial*

"The judge or judges before whom any case is tried in the Criminal Court of Baltimore (and the several parts thereof as heretofore, or may hereafter be instituted), shall have exclusive jurisdiction to hear and determine, and the said judge or judges shall hear and determine, all motions for a new trial where such motions arise, either on questions of fact or for misdirection upon any matters of law, and all motions in arrest of judgment, or upon any matters of law, determined by the said judge or judges."

Since this has no applicability to the case at bar, which was not tried in Baltimore, we do not wish to be understood as passing

tended to the Court of Special Appeals had it been in existence prior to the adoption of the amendment. As matters stood after the amendment, if evidence is to be weighed on a motion for a new trial after a jury has returned a guilty verdict in a criminal case, the power to do so must be derived from the 1950 amendment to Constitution, Art. XV, § 5, and we have no difficulty in holding that it is not, *Brown v. State, supra*, 237 Md. at 497. The grant to the trial court of the power "to pass upon the sufficiency of the evidence to sustain a conviction" means to us precisely what it meant to Judge Bowie: that the test of sufficiency to be applied in considering a motion for a new trial is exactly that applied in considering a motion for judgment of acquittal: was there any relevant evidence, properly before the jury, legally sufficient to sustain a conviction? Any wider scope of review of the evidence would be impermissible under our Constitution.

Judge Delaplaine, speaking for the Court, observed in *Shelton v. State*, 198 Md. 405 at 412, 84 A. 2d 76 (1951), the first case before this Court after Constitution, Art. XV, § 5 had been amended:

> "While the Court of Appeals now has the constitutional authority to pass upon the sufficiency of the evidence to sustain a conviction in a criminal case tried before a jury, this Court will not inquire into or measure the weight of the evidence, and will not reverse the judgment if there is any proper evidence before the jury on which to sustain a conviction."

This should not be taken to mean, however, that the trial court is precluded from granting a new trial in a criminal case where the jury's verdict is clearly contrary to the evidence, because this stems from venerable cus-

---

upon the effect or validity of Chapter 667 after the date when the amendment of Constitution, Art. IV, § 33 became effective. Chapter 668 of the Laws of 1965 eliminated any reference to the Supreme Bench in Code, Art. 27, § 594 which, as amended, now provides that motions for new trials in criminal cases shall be heard by the trial court.

tom and usage, Blackstone, *Commentaries on the Law,* Book 4, Chapter 27 at 910 (Gavit ed. 1941). The granting of a new trial in such a case involves no more than a determination by the trial court that the evidence was insufficient to sustain the conviction. Moreover, when the interest of justice requires it, the granting of a new trial in a criminal case tried to a jury lies within the sound discretion of the trial court, Rule 759 a, *supra,* if grounded on matters extrinsic to the record, *Hochheimer, supra,* at 209-10.

The granting of a motion for a new trial in a civil case cannot be analogized, however, for there, the trial judge may weigh the evidence to determine whether the verdict is determined by a preponderance of the evidence. As we said in *Edwards v. State,* 198 Md. 132, 157-58, 81 A. 2d 631 (1950) :

> "* * * In any case, civil or criminal, to meet the test of legal sufficiency, evidence (if believed) must either show directly, or support a rational inference of, the fact to be proved. In a civil case the fact must be shown, or the inference supported, by a preponderance of probability or an opposite preponderance must be overcome. In a criminal case the fact must be shown, or the inference supported, beyond a reasonable doubt or to a moral certainty, or a reasonable doubt of an opposite fact must be created. The difference in degree of proof is ordinarily for the triers of facts."

See, also, *Snyder v. Cearfoss,* 186 Md. 360, 368, 46 A. 2d 607 (1946) ; 2 Poe, *Pleading and Practice* § 336 at 317 (5th ed. 1925).

It should also be pointed out that when a criminal case is tried by the court, sitting without a jury, the case is considered in a somewhat different fashion on appeal. Former Rule 7 (c) of the Criminal Rules of Practice and Procedure provided that:

> "When a criminal charge has been so tried by

the Court, an appeal may be taken as provided by law. Upon appeal the Court of Appeals may review upon both the law and the evidence to determine whether in law the evidence is sufficient to sustain the conviction, but the verdict of the trial court shall not be set aside on the evidence, unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

In *Lambert v. State,* 196 Md. 57, 68, 75 A. 2d 327 (1950), the first case in which Rule 7 (c) was applied, we said: "[The Rule] was not intended, and will not be construed, to permit us to reverse judgments merely because our conclusion on the record is different from that of the trial judge. It is only intended to prevent manifest error." Present Rule 772 which has the effect of applying Rule 1086 to criminal cases leaves appellate review in the same posture. In a criminal case, tried without a jury, the findings of fact of the trial judge will not be disturbed unless clearly erroneous, *Tucker v. State,* 244 Md. 488, 224 A. 2d 111 (1966).

Nor should our conclusion be taken to mean that a motion for a new trial cannot be granted at the instance of the defendant in a criminal case tried to a jury where the verdict is contrary to law, *Slansky v. State, supra,* 192 Md. at 108, for while Maryland juries are judges of the law, an improper or unwarranted conclusion can be set aside.

*Judgments of the Court of Special Appeals reversed; judgment of the Circuit Court for Prince George's County in Criminal Trials No. 8996 reinstated; judgment of that court in Criminal Trials No. 8997 reinstated; costs here and in the Court of Special Appeals to be divided between appellees and paid by them.*